THE SISTERS OF THE THIRD ORDER OF ST. FRANCIS, Plaintiff-Appellee, *v.* THE COUNTY OF TAZEWELL, Defendant-Appellant.—THE SISTERS OF THE THIRD ORDER OF ST. FRANCIS, Plaintiff-Appellant, *v.* THE COUNTY OF TAZEWELL, Defendant-Appellee.

Third District   Nos. 3—83—0481, 3—83—0584 cons.

Opinion filed March 27, 1984.

HEIPLE, J., specially concurring.

G. Edward Orr, Assistant State's Attorney, of Pekin, for the County of Tazewell.

Danny L. Schroeder, Jr., of Bartley, Fraser, Parkhurst & Hession, of Peoria, for the Sisters of the Third Order of St. Francis.

JUSTICE SCOTT delivered the opinion of the court:

The above cases were heard separately in the circuit court of Tazewell County but on appeal were consolidated for oral argument and disposition.

In case No. 3—83—0481, Jerry Duran, a police officer of the city of East Peoria, responded to a call which concerned a fight. In the course of this call it became necessary for the officer to defend himself from the physical attacks of Ricky McMahon. The officer in defending himself by subduing McMahon used both his sap and a flashlight on the person of his attacker. McMahon was injured and an ambulance transported him to the St. Francis Hospital in Peoria. McMahon was admitted to the hospital in the early morning hours of August 23, 1980. At 9:30 p.m. on the same date he was released from the hospital and admitted to the Tazewell County jail at 11:20 p.m.

The defendant was not charged with the commission of any offense until August 26, 1980.

The plaintiff, St. Francis Hospital, submitted a bill to Tazewell County for services rendered to McMahon in the amount of $433.50. The circuit court of Tazewell County entered judgment in this amount for the plaintiff hospital pursuant to its interpretation and reliance on the statutory provisions in section 19 of "An Act to revise the law in relation to jails and jailers" (Ill. Rev. Stat. 1979, ch. 75, par. 19).

In case No. 3—83—0584, on June 11, 1980, Roy Watson was shot fleeing from the scene of a suspected burglary by East Peoria policemen. At the request of an East Peoria police officer, Watson was transported to the St. Francis Hospital. Approximately 11 hours after his admission to the hospital the suspect died as the result of gunshot wounds. The plaintiff hospital submitted a bill to Tazewell County for services rendered in the amount of $7,334.76. The circuit court of Tazewell County denied plaintiff's motion for summary judgment and then granted a cross motion for summary judgment in favor of the defendant county.

Timely appeals ensued from the judgment entered in each case. We further note that in each case the party receiving medical services qualified as a medically injured person and that in neither case did the law enforcement officials have any warrant for the arrest of the individual apprehended.

The issues presented in both cases, while raised in somewhat different language, are nevertheless identical and a disposition of them will serve to determine both appeals.

At the outset it is noted that the defendant hospital cites and relies on statutory provisions and a number of cases to establish that McMahon and Watson were arrested and in custody of law enforcement officials when injured even though no warrants had been issued for their arrest. It is not necessary to address the questions concerning arrest and custody because it is not disputed that both individuals were arrested and in custody almost immediately after they were injured. The crucial questions are, by whom were they arrested and in whose custody were they placed. It is clear that they were not arrested by the county of Tazewell or any agent of the county. It is further clear that McMahon and Watson at the time of their hospitalization were never in the custody of the defendant county. In regard to McMahon, no charges were filed against him until after he was released from the hospital. Several days after his release county charges were filed against him by the defendant county and later still he was indicted. As to Watson, who survived his gunshot wounds for but a

brief period of time, no county charges were ever returned against him. There was no privity or relationship between the injured individuals and the county of Tazewell as to the admission of McMahon and Watson into the St. Francis Hospital or between them and the county while they were patients in the hospital.

Even though the county of Tazewell was not privy to the admission and hospitalization of McMahon and Watson, the plaintiff hospital argues that the expense of hospitalization should be borne by the county of Tazewell and in support of this contention relies on the following statutory provision:

"The warden of the jail shall furnish necessary bedding, clothing, fuel and *medical aid* for all prisoners *under his charge*, and keep an accurate account of the same." (Emphasis added.) Ill. Rev. Stat. 1981, ch. 75, par. 19.

An examination of the above statutory provision is subject to but one interpretation, to-wit, the legislature has directed that the warden (in the instant cases the county sheriff; see Ill. Rev. Stat. 1981, ch. 75, par. 2) shall provide *inter alia* medical aid only to those prisoners under his charge. Even though McMahon and Watson were arrested and placed in custody by East Peoria police, such actions did not result actually or constructively that they were under the charge of the sheriff of the county of Tazewell.

The plaintiff in support of its argument to the contrary relies on the case of *St. Mary of Nazareth Hospital v. City of Chicago* (1975), 29 Ill. App. 3d 511, 331 N.E.2d 142. In the *St. Mary* case the hospital filed suit against the city of Chicago, county of Cook and the director of the Cook County Department of Public Aid to recover expenses incurred in the treatment of an individual who was shot during an attempted robbery. The factual situation was that on the evening of August 7, 1970, policemen transported a man to the emergency room of the St. Mary of Nazareth Hospital. The individual, who had been shot, remained in the hospital until November 19, 1970. The day following the admission it was determined that the patient should be charged with attempted armed robbery since he had been shot by an intended victim. On this day the victim of the intended armed robbery filed a complaint against the patient.

The reviewing court in the *St. Mary* case held that Cook County was responsible for the medical expenses incurred by the patient. This conclusion was based upon the court's interpretation of the statutory provisions in section 19 of "An Act to revise the law in relation to jails and jailers" (Ill. Rev. Stat. 1969, ch. 75, par. 19), which contained the same language relied on by the plaintiff hospital in the instant

case. The reviewing court in reaching its conclusion made the following pertinent observations:

"It is clear, therefore, that as of the early morning of August 8, 1970, Frank Koniewicz had been charged with a violation of the Illinois Criminal Code (Ill. Rev. Stat. 1969, ch. 38, par. 8—4(a).) After Koniewicz had been *charged* with a violation of our State criminal law, it was the duty of the sheriff of Cook County to hold Koniewicz until bail was made or if bail was not made to hold him until the time for trial. *** We are, therefore, of the opinion that from August 8, 1970, the date Knoiewicz was *charged* with a violation of our State criminal law, his custody was the responsibility of the sheriff of Cook County. Although actual custody of Koniewicz was impossible due to the injuries he had sustained, Koniewicz was technically in the custody of the sheriff of Cook County from and after August 8, 1970. ***

*** As we have already indicated, from and after the time Koniewicz was charged with a violation of our State's criminal law the responsibility for his custody was in the Sheriff of Cook County. *** [F]rom and after the time Frank Koniewicz was charged with attempted armed robbery his custody was the responsibility of the sheriff of Cook County." (Emphasis added.) *St. Mary of Nazareth Hospital v. City of Chicago* (1975), 29 Ill. App. 3d 511, 515-16, 331 N.E.2d 142, 146.

The foregoing reasoning is indeed tenuous and difficult to reconcile with section 19 of "An Act to revise the law in relation to jails and jailers (Ill. Rev. Stat. 1981, ch. 75, par. 19). Had the legislature intended that a county should be liable for medical expenses resulting solely from actions committed by municipal police officers, such an intent could have easily been so stated. However, even though we accept the court's reasoning in the *St. Mary* case, it does not result in holding the county of Tazewell responsible for the medical expenses incurred in the instant cases. Neither of the patients, McMahon or Watson, were ever charged with the commission of an offense while hospitalized. As we interpret the *St. Mary* case, the charging of the patient while hospitalized is the catalyst which results in the liability of the county for incurred medical expenses.

For the reasons set forth the judgment of the circuit court in case No. 3—83—0481 is reversed and the judgment in case No. 3—83—0584 is affirmed.

Reversed in case No. 3—83—0481, affirmed in case No. 3—83—

0584.

BARRY, J., concurs.

JUSTICE HEIPLE, specially concurring:
I concur with the result reached. However, I neither accept nor endorse the reasoning in the case of *St. Mary of Nazareth Hospital v. City of Chicago* (1975), 29 Ill. App. 3d 511. That opinion flies in the face of the plain language of the statute and, for whatever its significance, common sense. The sheriff, as agent, and the county, as principal, are made responsible by statute for the medical care of prisoners under the charge of the warden of the jail. (Ill. Rev. Stat. 1981, ch. 75, par. 19.) The fact that the prisoner may be charged with an offense does not *ipso facto* place the prisoner under the charge of the sheriff. Physical charge of the prisoner is required.