774 P.2d 806

**MOHAVE COUNTY, Arizona, a political subdivision, Plaintiff–Appellee Cross–Appellant,**

**v.**

**CITY OF KINGMAN, a body politic; City of Bullhead, body politic; City of Lake Havasu, a municipal corporation, Defendants–Appellants Cross–Appellees.**

**No. CV–88–0203–PR.**

Supreme Court of Arizona.

May 9, 1989.

William J. Ekstrom, Jr., Mohave Co. Atty. by William F. McDonald, Deputy Co. Atty., Kingman, for plaintiff-appellee cross-appellant.

James E. Chavez, Kingman City Atty., Kingman, for defendant-appellant cross-appellee City of Kingman.

Paul Lenkowsky, Bullhead City, for defendant-appellant cross-appellee City of Bullhead.

Vincent A. Iannone, Jr., Lake Havasu City Atty., Lake Havasu City, for defendant-appellant cross-appellee City of Lake Havasu.

Johnson & Shelley by J. LeMar Shelley, Mesa, for amicus curiae League of Arizona Cities and Towns.

CAMERON, Justice.

## I. JURISDICTION

We granted Mohave County's petition for review of a court of appeals' opinion holding that Mohave County was not liable for the costs of housing prisoners arrested, charged or convicted of violating a city ordinance, but was liable for the cost of housing prisoners charged or convicted of violating a state statute. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), A.R.S. § 12–120.24 and Ariz.R.Civ.App.P. 23, 17B A.R.S.

## II. ISSUES

A. Are counties responsible for the cost of housing prisoners arrested by a city officer and charged with violating a city ordinance?

B. Are counties responsible for the cost of housing prisoners arrested by a city officer but charged with violating a state statute?

## III. FACTS AND PROCEDURAL BACKGROUND

The facts are not in dispute. None of the three defendant-cities maintain a jail. All persons arrested by city officers who require incarceration, whether arrested for violating a state statute or a city ordinance, are confined in Mohave County's jail facility. The county and the cities have not made any contractual arrangements to cover the expenses of housing the prisoners. Prior to this lawsuit, the county had not requested reimbursement from the cities.

Mohave County filed a two-count complaint seeking first, a declaration of the parties' rights under A.R.S. § 31–121(C) and second, recovery of specific amounts from each city for expenses incurred by the county for housing prisoners on the cities' behalf during a one-year period commencing 1 July 1985. The cities and the county both moved for summary judgment.

The trial judge granted partial summary judgment, ruling that the cities were liable to the county for the cost of housing prisoners detained on charges pending in the city court or who have been tried, convicted and sentenced in a city court. In making this determination, the trial judge did not differentiate city court proceedings involving city ordinance violations from city court proceedings involving state statute violations. The trial court also ruled that the cities were not liable to the county for either the pretrial or the post-trial housing of prisoners charged with felony offenses.[1]

---

1. Felony offenses are exclusively state offenses.

From this ruling, Mohave County and the defendant-cities appealed.

The court of appeals rejected the trial court's reasoning that responsibility depended upon which court had custody and control. Citing A.R.S. § 31–121(C), the court of appeals adopted a "nature of the offense" rule for determining which governmental entity was responsible for the housing costs. By so doing, the court of appeals affirmed the trial court's ruling that the cities were not liable for costs of housing prisoners charged with a felony offense. The court of appeals reversed the remaining portion of the trial judge's ruling, stating that it was overbroad, and held that the cities were liable to the county only when the prisoner was charged with violating a city ordinance. We granted the petition for review because of a perceived conflict with our prior decision in *City of Phoenix v. Superior Court,* 139 Ariz. 175, 677 P.2d 1283 (1984).

## IV. DISCUSSION

### A. *Responsibility for Prisoners Charged With Violating a City Ordinance*

We reject any contention that, under A.R.S. § 31–121(A) and § 11–601(3), the county, rather than the city, is liable for the cost of housing prisoners charged with or convicted of violating a city ordinance.

A.R.S. § 31–121(A) states the following:
The sheriff shall receive all persons committed to jail by competent authority and provide them with necessary food, clothing and bedding, the cost of which shall be a county charge.

Also, A.R.S. § 11–601(3) states that,
County charges are:

\*      \*      \*      \*      \*      \*

3. Expenses necessarily incurred in the support of persons charged with or convicted of crime and committed therefor to the county jail.

In determining the legislative intent of a statute, courts must construe the statute in conjunction with other relevant statutes. *Lemons v. Superior Court,* 141 Ariz. 502, 505, 687 P.2d 1257, 1260 (1984); *Dupnik v. MacDougall,* 136 Ariz. 39, 42, 664 P.2d 189,

192 (1983). Thus, A.R.S. §§ 31–121(A) and 11–601(3) must be read in conjunction with § 31–121(C), which states:
A person who is arrested or charged with a violation of a city or town ordinance may be housed in a city or town jail, or in a county jail if the city or town makes contractual arrangements with the board of supervisors of that county to house prisoners. A county board of supervisors shall arrange to house a person who is arrested or charged with a violation of a state statute in a county jail or may arrange to house such a person in a city or town jail if the board contracts with the city or town to house such prisoners.

■ Apparently the legislature intended cities to be responsible for housing prisoners charged with violating a city ordinance. If the city does not want to maintain its own jail, it may enter into a contractual arrangement with the county and, under A.R.S. § 31–121(A), the county is required to receive the city prisoners. A.R.S. § 31–121(A) does not place responsibility on the county for the cost of housing city prisoners; it merely requires the county to receive the city prisoners. The counties are still entitled under A.R.S. § 31–121(C) to charge the cities for the cost of housing such city prisoners.

Additional support for this interpretation of A.R.S. § 31–121(A) comes from the fact that subsection A was adopted from California (CAL.PENAL CODE § 4015 (West 1982)) and California has previously held that cities are liable to counties for the cost of housing prisoners charged with or convicted of violating city ordinances. *Washington Township Hosp. Dist. v. County of Alameda,* 263 Cal.App.2d 272, 275–76, 69 Cal.Rptr. 442, 444 (1968). The California court also held that "liability for the cost of maintaining a prisoner in a county jail is dependent upon the basis of the prisoner's detention...." *Id.* Judicial constructions of statutes from other jurisdictions are persuasive authority if the Arizona statute is adopted from that jurisdiction. *Cottonwood Dev. v. Foothills Area Coalition,* 134 Ariz. 46, 50, 653 P.2d 694, 698 (1982). We find the California court's interpretation of

the statute to be persuasive authority for the proposition that cities are liable for the cost of housing prisoners charged with or convicted of violating a city ordinance.

Additionally, other courts have interpreted similar statutes as we now interpret A.R.S. § 31–121(A). *Utah County v. Orem City*, 699 P.2d 707 (Utah 1985) (statutes stating that county charges include the cost of housing prisoners and requiring the sheriff to "receive all persons committed to jail by competent authority" did not, when read with other statutes, show a legislative intent that the county bear the cost of housing prisoners convicted of violating a city ordinance); *see also County of Bannock v. City of Pocatello*, 110 Idaho 292, 715 P.2d 962 (1986) (holding that the city, not the county, is liable for the cost of housing prisoners charged with or convicted of violating a city ordinance); *City of Grand Rapids v. County of Kent*, 96 Mich. App. 15, 292 N.W.2d 475 (1980) (county entitled to charge per diem fee to cities for confinement in county jail of persons charged with or convicted of violating a city ordinance). Counties are not responsible for the costs of housing city prisoners accused or convicted of violating a city ordinance.

## B. *Liability for City Prisoners Charged With Violating a State Statute*

The trial court held that city prisoners charged with violating a state statute and tried in a city court were the responsibility of the cities. We do not agree. We believe A.R.S. § 31–121(C) also controls this issue. A.R.S. § 31–121(C) is plain and unambiguous. Under that statute, the nature of the offense determines which governmental entity is responsible for prisoner housing costs. Liability does not depend upon which court has jurisdiction over the prisoner, as Mohave County argues.

We agree with the court of appeals that the statute "deals with two categories of persons: (1) those who are arrested for or charged with violating a city or town ordinance and (2) those who are arrested for or charged with violating a state statute."

*Mohave County v. City of Kingman*, 158 Ariz. 172, 175, 761 P.2d 1076, 1079 (App. 1988). The first sentence of subsection C makes it apparent that the legislature intended for cities to be responsible for prisoner maintenance when the nature of the offense is a violation of a city ordinance, because, as the statute provides, the county is obligated to house the prisoner if "contractual arrangements" exist between the county and the city. Such "contractual arrangements" necessarily imply that the city pay for the housing. Otherwise, that portion of the statute would have no purpose. The last sentence of subsection C also makes it equally apparent that the legislature intended for the county to pay for housing costs when the offense involves a state statute.

▪ Responsibility for prisoner maintenance depends upon the nature of the offense committed, not upon which court has jurisdiction over the prisoner or who arrests the offender. The California Court of Appeals addressed this same question:

> [W]here a prisoner is confined in the county jail after having been charged with or convicted of violating a state law or county ordinance, the expense of his care and maintenance must be paid by the county, and this is true even though the prisoner may have been arrested by a city police officer.

*Washington Township Hosp. Dist. v. County of Alameda*, 263 Cal.App.2d 272, 275, 69 Cal.Rptr. 442, 444 (1968) (citing *City of Pasadena v. County of Los Angeles*, 118 Cal.App.2d 497, 258 P.2d 28 (1953)).

This construction is in accordance with the approach adopted by a majority of states that have considered this issue. These states follow the "nature of the offense" rule, while a minority of states have adopted a "custody and control rule, which places responsibility for the care of a prisoner upon the entity that exerts actual physical dominion and control over the prisoner." *County of Aitkin v. Department of Corrections*, 394 N.W.2d 608, 610 (Minn. Ct.App.1986).[2] We believe the court of ap-

---

2. For cases following the majority rule see *Washington Township Hosp. Dist. v. County of*

**506**

peals correctly held that the "nature of the charge is the sole criterion" for determining which governmental entity is liable for the costs of housing a prisoner. *Mohave County v. City of Kingman*, 158 Ariz. 172, 175, 761 P.2d 1076, 1079 (App.1988). If the charge involves a violation of a city or town ordinance, the city is responsible; if the charge involves a violation of a state statute, the county is responsible.

We recognize that our opinion in *City of Phoenix v. Superior Court*, 139 Ariz. 175, 677 P.2d 1283 (1984), may appear to be contrary to what we now hold. In *City of Phoenix*, we held that the city, rather than the county, was liable for the defendant's hospitalization and medical costs resulting from a Rule 11 competency determination ordered by the city court.

We held that A.R.S. § 13–3992 was "controlling" and that under that statute the city was liable for the costs as long as the matter was pending in city court. 139 Ariz. at 178, 677 P.2d at 1286. The statute reads:

> When a defendant in a criminal action, any time prior to pronouncement of sentence, is committed to the state hospital, the expenses of transporting him to and from the hospital and of maintaining him while confined therein shall be a charge against the county in which the indictment was found or information filed, but the county may recover such expenses from the estate of the defendant or from a relative, town, *city* or county required by law to provide for and maintain the defendant.

A.R.S. § 13–3992 (emphasis added). This statute is not involved in the instant case

and concerns the responsibility of the county to absorb the cost of transportation and maintenance of prisoners in the state hospital. Although it appears that we adopted a custody and control rule for the purposes of providing for a mental examination pursuant to Rule 11, Ariz.R.Crim.P., 17 A.R.S., we do not extend that rule to this case. There is a difference between treatment at the state hospital pursuant to Rule 11 and in aid of the court's determination of the ability of the defendant to stand trial and the routine pretrial and post-trial custody involved in this case. We hold that *City of Phoenix* does not apply.

## V. DISPOSITION

The court of appeals' decision is approved. The trial court's decision is affirmed in part and reversed in part and the matter is remanded to the trial court with directions to enter judgment consistent with this opinion.

FELDMAN, V.C.J., and MOELLER, J., concur.

GORDON, C.J., did not participate in this matter.

CORCORAN, J., did not participate in the determination of this matter.

HOLOHAN, J., participated in this matter, but retired prior to the filing of this opinion.

*Alameda*, 263 Cal.App.2d 272, 69 Cal.Rptr. 442 (1968); *County of Bannock v. City of Pocatello*, 110 Idaho 292, 715 P.2d 962 (1986); *Wesley Medical Center v. City of Wichita*, 237 Kan. 807, 703 P.2d 818 (1985); *L.P. Medical Specialists, Ltd., v. St. Louis County*, 379 N.W.2d 104 (Minn. Ct.App.1985); *Montana Deaconess Medical Center v. Johnson*, — Mont. —, 758 P.2d 756 (1988); *Oregon State Bd. of Higher Educ. v. Washington County*, 52 Or.App. 369, 629 P.2d

373 (1981); *Utah County v. Orem City*, 699 P.2d 707 (Utah 1985).

For cases following the minority rule see *Sisters of the Third Order of St. Francis v. County of Tazewell*, 122 Ill.App.3d 605, 78 Ill.Dec. 230, 461 N.E.2d 1064 (1984); *Cuyahoga County Hosp. v. City of Cleveland*, 15 Ohio App.3d 70, 472 N.E.2d 757 (1984); *University Hosps. v. City of Cleveland*, 28 Ohio Misc. 134, 276 N.E.2d 273 (Ct.Common Pleas 1971).