WOODBURY COUNTY, Iowa, and
Leo P. Miller, Appellants,

v.

CITY OF SIOUX CITY, Iowa, Appellee.

No. 90–777.

Supreme Court of Iowa.

Sept. 18, 1991.

Douglas L. Phillips of Blair, Stoik, Phillips & Ellis, P.C., Sioux City, and Brigit M. Barnes, Asst. County Atty., for appellants.

James L. Abshier, City Atty., and C. Maurice Rawe, Asst. City Atty., for appellee.

Thomas C. Fritzsche, Asst. Scott County Atty., for amicus curiae Scott County.

William F. Sueppel and William J. Sueppel of Meardon, Sueppel, Downer & Hayes, Iowa City, for amicus curiae League of Iowa Municipalities.

Lee H. Gaudineer of Austin, Gaudineer, Austin, Salmons & Swanson, Des Moines, for amicus curiae Ass'n of Counties.

Denver D. Dillard, Linn County Atty., for amicus curiae Linn County.

Considered by HARRIS, P.J., and SCHULTZ, CARTER, LAVORATO, and NEUMAN, JJ.

SCHULTZ, Justice.

This case presents issues arising from a city-county conflict regarding whether a county must accept into its jail persons arrested by city officers. This conflict also extends to the allocation and determination of detention costs incurred prior to an arrestee's appearance before a magistrate. In 1989, Woodbury County (County) and its sheriff[1] commenced a declaratory judgment action against the City of Sioux City, Iowa (City), requesting the court to determine the disputed issues. Following a hearing on stipulated facts, the district court ruled that the County must receive and detain arrestees. The court also determined the allowable costs of maintaining detained arrestees and the allocation of those costs between the parties. Neither party was satisfied with the results. We affirm in part and reverse in part.

In our de novo review of this equity action, we accept the facts stipulated to by the parties. Woodbury County owns the only state-approved functioning jail facility in the County. The cost of operating the jail facility is levied against all property owners in the County.

The City, which is located in the County, operates a police department. The normal procedure following the arrest or detention of an individual by the City's officers is to deliver the individual to the County's jail facility to be booked and housed. At the first available opportunity, the individual is either released on a scheduled bond or taken before a magistrate for an initial appearance to determine whether there is probable cause to believe that a crime has been committed. If probable cause is found, a bond is set, and the individual is released if a bond is posted.

We now turn to the contentions raised by the parties.

I. *County's obligation to confine persons arrested by the City police.* In this division we must determine whether the County is required to confine in the county jail persons who are arrested by the City's officers on either state or municipal charges during the period between arrest and appearance before a magistrate. Even though an arrestee is required to be taken without unnecessary delay to the nearest or most accessible magistrate, Iowa Code sections 804.21–.22,[2] an arrestee may need to be detained for a period of time when the magistrate court is not in session.[3] Thus, the question becomes whether the County may legally refuse to accept and hold a detained arrestee in the county jail until the magistrate court convenes.

The trial court concluded that resolution of this issue is controlled by Iowa Code section 356.1 which provides in pertinent part as follows:

The jails in the several counties in the state shall be in charge of the respective sheriffs and used as prisons:

1. For the detention of persons charged with an offense and committed for trial or examination.

---

1. As the sheriff and County share the same interest in this action, hereafter we shall refer only to the County in addressing plaintiffs.

2. Unless otherwise indicated, all statutory references are to the 1989 Iowa Code.

3. We recognized that a magistrate is often unavailable during late-evening or early-morning hours and that detention during this period is not an unnecessary delay. Iowa Code § 804.-21(4); *Valadez v. City of Des Moines,* 324 N.W.2d 475, 479 (Iowa 1982).

The trial court held that the County was required to accept and detain an arrestee in the county jail.

The County maintains that subsection 1 is plain and unambiguous and requires the County to hold a city prisoner in detention only when that prisoner has been both charged and committed by a magistrate. The trial court rejected this two-step prerequisite for detention by the County. It concluded that an absurd result would occur if small town police officers must maintain physical custody of all arrested persons until a magistrate was able to commit them to the county jail. The court concluded that the legislature did not intend such a result and construed the word "and" to mean "or" so that the County would have to receive all arrestees who are charged with a violation of either a city ordinance or a state violation.

 Certain rules offer guidance in determining the meaning of a statute. The court usually will not resort to rules of statutory construction if the terms of a statute are explicit. *State v. Perry*, 440 N.W.2d 389, 391 (Iowa 1989). However, if the "statutory language appears fairly certain but adherence to the strict letter of the law leads to injustice, absurdity, or contradiction, we may look to another meaning." *Id.* (citation omitted). Sometimes we have construed the word "and" as the disjunctive "or" to give statutes a sensible, practical and workable construction. *Koethe v. Johnson*, 328 N.W.2d 293, 299 (Iowa 1982). On the other hand, a court is not free to ignore express statutory language in favor of what it believes the statute should provide. *Donnelly v. Board of Trustees*, 403 N.W.2d 768, 771 (Iowa 1987). Furthermore, to consider legislative intent, the court has a duty to avoid conjecture. *In re Guardianship of Wiley*, 239 Iowa 1225, 1231, 34 N.W.2d 593, 596 (1948).

In this case, the trial court rejected an interpretation of section 356.1(1) based on the express terms of the statute because it deemed that the result would be absurd under today's circumstances. It recognized that most cities and towns no longer have jails or places for the detention of arrestees. We do not address the validity of these conclusions, however, we believe the trial court should have construed Iowa Code section 356.1(1) in the context of the time period during which it was enacted. "The legislative intent that controls in the construction of a statute has reference to the legislature that enacted it...." *In re Guardianship of Wiley*, 239 Iowa at 1231, 34 N.W.2d at 596. The history of subsection 1 reveals that it was derived from Iowa Code section 3103 (1851), which contained language almost identical to section 356.1(1). A revised version of section 3103 appeared in Iowa Code section 5637 (1897), and embodied language identical to the present subsection 1. Consequently, an appropriate determination of legislative intent requires a focus on the period of the late 1800s.

To determine the legislature's intent in the previous century, we first examine the common law which serves as an antecedent to guide us in interpreting section 356.1(1). *See Cookies Food Prods., Inc. v. Lakes Warehouse Distrib., Inc.*, 430 N.W.2d 447, 451 (Iowa 1988). Furthermore, we are obligated "to interpret statutes in conformity with the common law wherever statutory language does not directly negate it." *Id.* at 452. Common law placed the duty upon the arresting officer to hold the arrestee until appearance before a magistrate. 5 Am.Jur.2d *Arrest* § 75 (1972); 6A C.J.S. *Arrest* § 63 (1975). If we interpret the word "and" in section 356.1(1) in its ordinary conjunctive sense of connecting two clauses, an arresting officer rather than a county would bear the responsibility to hold the arrestee. This interpretation follows the common-law rule and the statutory language does not directly negate it. Thus, we conclude that the word "and" should be construed as a conjunction, not as the disjunctive "or."

We believe this conclusion is further supported by examination of the statutory framework which existed in 1897. We examine not only the statute in question, but also all other relevant statutes which may disclose a common underlying motivating purpose. *Presbytery v. Harris*, 226

N.W.2d 232, 235 (Iowa), *cert. denied*, 423 U.S. 830, 96 S.Ct. 50, 46 L.Ed.2d 48 (1975). The 1897 Iowa Code chapter governing preliminary hearings authorized a magistrate to commit an arrestee to a county jail during adjournments of the hearing or if an indictable offense was found. Iowa Code §§ 5219, 5230 (1897). Iowa Code section 5220 (1897) provided that if there was no county jail, the sheriff must retain custody of the defendant during the proceeding. If section 5637 (currently section 356.1(1)), required a county to accept an arrestee solely on the basis of arrest, the authority provided by sections 5219, 5230 and 5637 was unnecessary and superfluous. A familiar principle of statutory construction is that a statute should not be construed in a manner that renders a portion of the statute superfluous. *Casteel v. Iowa Dep't of Transp.*, 395 N.W.2d 896, 898–99 (Iowa 1986). This rule also suggests a construction of section 356.1(1) favorable to the position taken by the County.

The City urges that this construction would prevent the county sheriff from placing the sheriff's own arrestee, who is temporarily detained for appearance before a magistrate, in the county jail. We reject this contention. Section 356.1 places the jail in the sheriff's charge. We believe that this section implies that the sheriff may use the jail for the detention of any arrestees. Section 356.1 further prescribes the type of persons that the sheriff must receive. We do not construe this section to prevent the sheriff's lawful use of the facility.

In summary, we conclude that section 356.1(1) requires the County to accept an arrestee from the City after the arrestee has been both charged and committed by a magistrate. Our conclusion does not prohibit the City and County from entering a contractual arrangement for the use of the jail. Such a contractual arrangement was the practice prior to the present conflict and seems to provide a logical solution. A contractual arrangement between the City and County raises fiscal considerations and problems that the legislature may wish to study and review in the future. We next address fiscal considerations in the following two divisions.

II. *Expense of detention.* The parties also seek a determination of whether the City or County should bear the cost of detaining arrestees prior to commitment by a magistrate. In division I, we held that the County need not accept arrestees prior to commitment by a magistrate, but did not address the responsibility for precommitment costs of these arrestees. The trial court held that the County was obligated to pay all costs incurred in detaining arrestees, including the precommitment costs incurred for those held for city ordinance violations.[4] The court suggested that the City may be responsible for an arrestee's medical expenses if caused by the actions of the arresting officer. As we interpret the trial court's ruling, the City's only fiscal responsibility is for postcommitment expenses of prisoners held for violations of city ordinances and any medical expenses caused by city officers.

At the heart of this issue is the meaning of Iowa Code section 356.15 which provides:

> All charges and expenses for the safekeeping and maintenance of prisoners shall be allowed by the board of supervisors, except those committed or detained by the authority of the courts of the United States, in which cases the United States must pay such expenses to the county, and those committed for violation of a city ordinance, in which case the city shall pay expenses to the county.

The County argues that section 356.15 applies only to the expenses for those arrestees who are required by section 356.1 to be accepted in a county jail. It urges that it should bear no precommitment cost of any person arrested by city officers regard-

---

**4.** The County in its brief indicates that the trial court held that the City was responsible for persons arrested for violations of city ordinances. The City's brief appears to concede that it is responsible for this expense. Our review of the judgment reveals that the trial court clearly stated that expenses for prisoners held for city ordinance violations "in advance of commitment shall be borne by the County...."

less of whether the person is arrested for a state law violation or a city ordinance violation.

■ A. *State charge.* We first examine the cost of prisoners held on state law charges in either a city or county jail. Contrary to the County's contention, section 356.15 expressly places the responsibility for all charges and expenses of keeping prisoners on a county, subject to two exceptions which are not applicable in this case. We conclude that a county's responsibility extends to costs incurred by a city jail, because section 356.15 does not limit this responsibility to costs incurred by a county jail. We are bound to follow the explicit terms of the statute and believe that the result is not unjust, absurd or contradictory. *State v. Perry,* 440 N.W.2d 389, 391 (Iowa 1989).

On first blush, the requirement in section 356.15 that a county pay all expenses may seem inconsistent with our interpretation of section 356.1(1) which allows a county to deny a city the use of a county jail for precommitment arrestees. In division I we interpreted section 356.1(1) by referring to the 1897 Code to determine the intent of the legislature at the time the statute was enacted. At that time, the predecessor to section 356.15, Iowa Code section 5651 (1897), contained language similar to section 356.1(1) and provided that the county is to pay expenses of "persons charged with public offenses and committed to the jail for examination...." In 1923, this quoted language was deleted and broader language was adopted. 1923 Iowa Acts ch. 255 § 10. Thus, our interpretation recognizes that the legislature broadened the scope of the county's fiscal responsibility by revising section 356.15 and is not inconsistent with our interpretation of section 356.1(1).

Additionally, an attorney general's opinion interpreting a predecessor to section 356.15 is consistent with our view. 1940 *Op. Iowa Att'y Gen.* 32. Relying on the statutory language that a county was to pay "[a]ll charges and expenses for the safe keeping and maintenance of [prisoners] ...," Iowa Code section 5511 (1935), the writer opined that a county may legally pay bills rendered by a city for the costs incurred in temporarily holding county prisoners in a city jail before formal arraignment. *Id.* at 33. This opinion recognizes a county's responsibility to pay a city for maintenance of prisoners held on state charges. Although an attorney's general opinion is not recognized as controlling authority, we grant it weight and respectful consideration. *Diehl v. Iowa Beer & Liquor Control Dep't,* 422 N.W.2d 480, 483 (Iowa 1988).

We disagree with the trial court's suggestion that the medical expenses of a prisoner which were a result of the actions of a city arresting officer should be the City's responsibility. Even though the trial court's assignment of this responsibility to the City might seem a desirable result, it is a legislative decision. We find no statutory language that suggests that responsibility for these medical expenses should be assigned based on a causation theory. Rather, section 356.15 clearly provides that a county is responsible for all charges and expenses of maintaining prisoners.

■ B. *City charge.* We turn to the issue of responsibility for the cost of maintaining arrestees held on city charges before their appearance before a magistrate. The trial court placed this cost on the County. Again, we are confronted with a problem of statutory construction. The section in question provides that a city is responsible for the cost of prisoners "committed for violation of a city ordinance...." Iowa Code § 356.15. Does the word "committed" require a judicial placement? Arrestees are also placed in a jail for safekeeping, without a judicial order of placement in a prison, following an arrest and pending an appearance before a magistrate. *See* Iowa Code § 804.21(1); *Valadez v. City of Des Moines,* 324 N.W.2d 475, 479 (Iowa 1982); *Miller v. Dickinson County,* 68 Iowa 102, 104, 26 N.W. 31, 31–32 (1885).

Dictionary definitions provide some latitude in interpretating the word "committed." *Black's Law Dictionary* 341 (rev. 4th ed.1968), speaks of sending a person to prison "by virtue of a lawful authority."

The definition in *Webster's New Collegiate Dictionary* 224 (150th Anniv. ed. 1981), does not include the restriction of lawful authority and simply states "to place in a prison...." Based on our comparison of the function of the term "committed" in section 356.15 with the restriction placed on this term in another section of the chapter, we must favor the broader definition given by *Webster's* as being indicative of legislative intent. In section 356.1(1), the term "committed" was qualified by the prepositional phrase "for trial or examination," which suggests a judicial order of placement in a prison. We believe that the legislature's failure to qualify the term "committed" in section 356.15, as it did in section 356.1(1), reveals an intent to use the term "committed" in the general sense of retention in jail rather than in the restricted sense of a legal commitment by judicial order.

Furthermore, we believe that it would be unreasonable to require the County to pay the expenses of maintaining prisoners detained for municipal charges. Historically and presently, cities receive revenue from fines collected for city ordinance violations. Iowa Code § 602.8106(2) (1989); Iowa Code § 6728 (1924). Logically, cities should pay for the maintenance of a person arrested for a city ordinance violation.

C. *Summary.* The majority of other jurisdictions have adopted the approach we set out in subdivisions A and B. Even though the statutes in different states vary, two theories have evolved from a review of the decisions of other jurisdictions.

The majority of jurisdictions follow the "nature of the offense" rule, which places the responsibility for the care and maintenance of an arrestee upon the governmental entity responsible for prosecution of the crime charged. *Mohave County v. City of Kingman,* 160 Ariz. 502, 505, 774 P.2d 806, 809 (1989); *Washington Township Hosp. Dist. v. County of Alameda,* 263 Cal. App.2d 272, 278, 69 Cal.Rptr. 442, 447 (1968); *Wesley Medical Center v. City of Wichita,* 237 Kan. 807, 813, 703 P.2d 818, 823 (1985); *Montana Deaconess Medical Center v. Johnson,* 232 Mont. 474, 478, 758 P.2d 756, 758 (1988); *Utah County v. Orem City,* 699 P.2d 707, 710 (Utah 1985). Two jurisdictions have arrived at the same result by holding that city police officers are acting on behalf of the sheriff when they make an arrest on a state charge. *St. Mary of Nazareth Hosp. v. City of Chicago,* 29 Ill.App.3d 511, 516–17, 331 N.E.2d 142, 146–47 (1975); *Oregon State Bd. of Higher Educ. v. Washington County,* 52 Or.App. 369, 375–76, 629 P.2d 373, 376 (1981). The minority rule is the "custody and control rule," which places responsibility for care of prisoners upon the entity that exerts actual physical dominion and control over prisoners. *Sisters of the Third Order v. County of Tazewell,* 122 Ill.App.3d 605, 607, 78 Ill.Dec. 230, 232, 461 N.E.2d 1064, 1066 (1984); *Cuyahoga County Hosp. v. City of Cleveland,* 15 Ohio App.3d 70, 71, 472 N.E.2d 757, 759 (1984).

We interpret Iowa Code section 356.15 to fall within the majority rule and apply the "nature of the offense" rule in this case. We hold that the County is fiscally responsible for all expenses of the care and maintenance, including medical expenses, of any person arrested and eventually charged with a state offense, regardless of whether the arresting officer is a city police officer or a member of the sheriff's department. We further hold that the City is responsible for both precommitment and postcommitment expenses of a prisoner charged with only a city ordinance violation. Consequently, we reverse those portions of the trial court's judgment to the contrary.

III. *Determination of expenses.* Both parties request in their pleadings a determination of the proper calculation of prisoner maintenance costs, including medical expenses, and how those costs should be allocated between the City and County when the prisoner is charged with both a city and a state offense. The trial court generally stated that allowable expenses "include all those services required of the County Jail by Section 356.5." It allocated expenses of maintaining persons charged with both city and state violations by a computation based on the length of the sentences for each violation.

The City challenges the trial court's prescribed formula for allocating costs between the City and County when a person is arrested for both city and state violations. It further objects to the trial court's determination of the items of expense that should be used in computing an average daily cost of providing required services to a prisoner. We address these matters in turn.

■ A. *Concurrent charges.* We believe that the parties should equally share the expenses of maintaining a prisoner who was charged with or sentenced concurrently on city and state violations. We hold that the expenses should be divided equally on those days that a prisoner is held for both a city and state violation or is serving a concurrent sentence on both a city and state violation. For example, if a prisoner is sentenced to ten days on a city violation and thirty days on a state violation to be served concurrently, the city is responsible for one-half of the ten-day concurrent sentence on the city violation, or five days. The county is responsible for the other one-half of the ten-day concurrent sentence on the city violation, or five days, and for the twenty-day sentence that the prisoner serves solely for the state violation. We believe that there is no merit in the request for proration based on the number of violations; one violation is all that is required to hold a prisoner.

■ B. *Computation of costs.* The City also urges that the trial court erred in using certain expenses in computing an average daily cost of providing services to prisoners. The trial court held that the County was to compute an average daily cost of providing all necessary services to a prisoner based upon the County's annual budget and number of prisoner days. The court then held that the average daily cost yielded by this computation, plus the actual costs of any extraordinary services rendered such as outside medical treatment, transportation to and from the place of medical treatment, nurse visits, and other services, could be passed to the City for its prisoners. The City complains that administrative costs, such as salaries of the sheriff, deputy sheriff, and jailer, should not be included in the calculation of the average daily cost of maintaining a city prisoner.

Iowa Code section 356.15 provides that the City "must pay such expenses to the county" for prisoners in the county jail for city ordinance violations. We believe the legislature intended that the County should be reimbursed for all its expenses. "Expenses" should include all costs required for the sheriff, as keeper of the jail, to perform the statutory duties listed in section 356.5. The County also incurs administrative expenses, such as the salaries of a sheriff, deputy sheriff and other employees, in carrying out its statutory duties. Therefore, we hold that the City must reimburse the County for the appropriate pro rata portion of the County's administrative expenses.

In so holding, we are mindful of cases cited by the City. We do not discuss these cases because we believe they are inapposite to this issue.

IV. *Summary.* We hold that the County is not required to accept an arrestee from the City until the person is charged and committed by a magistrate. We reverse the trial court's ruling on this issue.

We hold that the County bears the entire fiscal responsibility for expenses incurred in maintaining a person arrested on a state violation, including medical expenses. We affirm the trial court's ruling except for its suggestion that the City might be responsible for medical expenses.

We hold that the City bears the entire fiscal responsibility for expenses, including medical expenses, incurred in maintaining a person arrested on a city ordinance violation. We reverse that portion of the trial court's ruling to the contrary.

We hold that the expenses of a person arrested for both a city and state violation should be divided equally on those days that such person is held for both violations or is serving a concurrent sentence for both violations. We reverse that portion of the trial court's ruling contrary to this holding.

We hold that the trial court should be affirmed in its ruling on the computation of the average daily cost of providing necessary services to a prisoner, and the addition of the actual cost of extraordinary services.

We remand this proceeding to the trial court for an entry of judgment consistent with this opinion. We assess the costs of appeal against the County and City in equal shares.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.