[No. D048986. Fourth Dist., Div. One. Nov. 15, 2007.]

SHARP HEALTHCARE et al., Plaintiffs and Respondents, v.
COUNTY OF SAN DIEGO et al., Defendants and Appellants.

COUNSEL

John J. Sansone, County Counsel, and William A. Johnson, Jr., Deputy County Counsel, for Defendants and Appellants.

Hooper, Lundy & Bookman, Cary W. Miller, Mark A. Johnson, Amanda S. Abbott and Blake R. Jones for Plaintiffs and Respondents.

OPINION

**HALLER, J.**—A group of hospitals including Sharp Memorial Hospital (referred to collectively as Sharp[1]) sued the San Diego County Sheriff's Department and the County of San Diego (County) after the County notified the hospitals that it would no longer pay for the medical care expenses of arrestees who receive treatment at the hospitals before they are booked or otherwise committed into county jail (referred to in this opinion as precommitment arrestees).[2] The dispute arose from the parties' conflicting interpretations of several statutes which were amended in 1992 (Pen. Code,[3] § 4015; Gov. Code, § 29602), and an appellate court decision decided before the amendments (*Washington Township Hosp. Dist. v. County of Alameda* (1968) 263 Cal.App.2d 272 [69 Cal.Rptr. 442] (*Washington Township*)). Both parties filed motions for summary adjudication, asking the trial court to declare the parties' rights on the issue of the County's liability. Sharp requested a ruling declaring that the County was financially responsible for an arrestee's medical care expenses prior to booking into county jail, whereas the County requested a ruling declaring that it did not have this financial responsibility until after booking. The trial court granted Sharp's summary adjudication motion and denied the County's summary adjudication motion. The court later entered judgment in Sharp's favor.

---

[1] The plaintiffs are Sharp Healthcare, Sharp Memorial Hospital, Sharp Chula Vista Medical Center, Grossmont Hospital Corporation, Scripps Health, Scripps Memorial Hospital La Jolla, Scripps Memorial Hospital Encinitas, Scripps Memorial Hospital Chula Vista, Scripps Mercy Hospital, Palomar Pomerado Health System, Palomar Medical Center, and Pomerado Hospital. A lawsuit filed by Tri-City Hospital District was originally consolidated with this case, but then separated prior to the judgment.

[2] In their stipulated facts and briefing on appeal, the parties refer to such persons as "pre-arraignment arrestees." In this opinion we use the term "precommitment arrestees" to focus on the fact that the arrestees are not yet committed to the county jail. This commitment may occur through physical booking into the jail or through arraignment of a hospitalized arrestee. The County does not dispute that it is financially responsible for the medical care expenses of a hospitalized arrestee who is committed to the county jail via arraignment proceedings. Our references to arrestees who have been booked into the jail includes hospitalized arrestees who are committed through the arraignment process.

[3] Subsequent statutory references are to the Penal Code unless otherwise specified.

Based on our review of section 4015 and Government Code section 29602 after the 1992 amendments, we conclude the County is not liable for the medical care expenses of a person arrested and treated at a hospital before the arrestee is committed to the county jail. Accordingly, we reverse the judgment in favor of Sharp. We direct the trial court to enter an order granting the County's summary adjudication motion, and to enter a judgment consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

In August 2004, Sharp filed a complaint against the County alleging various causes of action regarding the County's liability for the hospital expenses of arrested persons. The complaint included a cause of action for declaratory relief requesting a ruling that the County was responsible for the payment of hospital expenses incurred by an arrestee before the arrestee was booked into county jail. Both parties filed motions for summary adjudication of the declaratory relief cause of action. Sharp argued that based on long-standing law, the County was financially responsible for health care services rendered to arrested persons before they were booked into county jail. The County argued that because a 1992 amendment to section 4015 had eliminated its obligation to accept arrestees into jail in need of immediate medical attention, it was not liable for the arrested person's medical care expenses until after booking.

The parties stipulated that before July 2003, when an arrestee was in need of medical care before being booked into county jail, the County booked the arrestee "in absentia" and paid for the arrestee's hospital expenses. However, in June 2003, the County notified the hospitals that it would no longer do this and that the hospitals should not send reimbursement claims to the County for these arrestees.

Based on its review of section 4015, Government Code section 29602, and the *Washington Township* case (which interpreted the latter code section), the trial court concluded that the County was liable for the health care services provided to the arrestees before booking into county jail. Accordingly, the court granted Sharp's summary adjudication motion and denied the County's summary adjudication motion. The parties subsequently settled the remaining issues in the litigation, and in May 2006 a stipulated judgment in favor of Sharp was filed. The stipulated judgment states: "The County of San Diego has a legal duty to reimburse Plaintiffs for health care services provided to pre-arraignment arrestees brought to one of Plaintiffs' hospitals by a law enforcement agency prior to the booking of the arrestee into the County jail." The stipulated judgment preserves the County's right to appeal from the judgment to challenge the court's ruling summarily adjudicating this issue.

## DISCUSSION

The County does not dispute that it is statutorily required to pay for the medical care of arrestees *after* they have been booked into county jail. However, the County argues that—based on 1992 amendments to section 4015—it is not required to pay for the medical care of arrestees who are taken to the hospital *before* they are booked into county jail. Resolution of this issue requires us to interpret section 4015 and Government Code section 29602 as amended in 1992 with a view to "ascertain[ing] the Legislature's intent in order to effectuate the law's purpose." (*White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 572 [88 Cal.Rptr.2d 19, 981 P.2d 944].)

To perform this task, we review the language of the statutes before they were amended in 1992, case authority interpreting that language (in particular the *Washington Township* case), and the language of the statutes after the 1992 amendments. Because an understanding of the rule established in *Washington Township* is critical to our resolution of the issue, we set forth the statutes and reasoning underlying the court's holding in some detail.

### *Statutory Provisions Before 1992 Amendments*

■ A county is not financially responsible for an expense unless there is statutory authorization for payment of the expense or an express or implied contractual obligation. (*Hart Bros. Co. v. County of L. A.* (1938) 31 Cal.App.2d Supp. 766, 768 [82 P.2d 221].) The County acknowledges there is clear statutory authority requiring a county to pay for the medical care expenses of arrestees who are physically incarcerated in the county jail. Section 4011 provides that, when necessary, a county shall transfer jail inmates to a hospital for medical care, and requires the county to pay for the hospital expenses. (§ 4011, subds. (a), (b) [transfer to hospital by court order]; § 4011.5 [immediate transfer without court order in emergency situations].)

However, there is no statute expressly extending county liability to an arrestee's hospital expenses incurred before booking into the county jail. Because of this statutory gap, disputes have arisen as to whether a county could properly be charged with the medical care expenses of an arrested person who was sent to a hospital for treatment before being committed to the county jail. In 1968, the *Washington Township* court, relying heavily on an Attorney General opinion (42 Ops.Cal.Atty.Gen. 87 (1963)), concluded that Government Code section 29602 provided the statutory authority to hold the county responsible for these charges. (*Washington Township, supra,* 263

Cal.App.2d at pp. 278–280.)[4] *Washington Township*'s conclusion was later followed in another Attorney General opinion filed in 1975. (58 Ops.Cal.Atty.Gen. 496, 500 (1975).)

In the Attorney General opinion upon which *Washington Township* relied, the Attorney General opined that, taken together, section 4015 and Government Code section 29602 obligated a county to provide for the medical care of arrested persons before booking into county jail. (42 Ops.Cal.Atty.Gen., *supra*, at pp. 89–91.) The first code section cited by the Attorney General—section 4015—mandated that the "sheriff shall receive all persons committed to jail by competent authority" and that the county shall pay for the care of the county jail inmates. (§ 4015, subd. (a).) At the time of the Attorney General's opinion, the sheriff's duty to "receive" (i.e., book) a person arrested for a state offense and sent to the jail was absolute, and there was no exception to this duty even if the person was injured or ill. (See 74 Ops.Cal.Atty.Gen. 21, 22, 24 (1991); 42 Ops.Cal.Atty.Gen., *supra*, at p. 89; *Washington Township, supra*, 263 Cal.App.2d at p. 279; *City of Pasadena v. County of L. A.* (1953) 118 Cal.App.2d 497, 499 [258 P.2d 28].) The second code provision cited by the Attorney General—Government Code section 29602—delineated county charges associated with jail inmates and criminal proceedings. Government Code section 29602 defined these charges as including (1) "expenses necessarily incurred in the support of persons charged with or convicted of a crime and committed to the county jail . . . ," and (2) expenses incurred "for other services in relation to criminal proceedings for which no specific compensation is prescribed by law . . . ." This Government Code section had long been interpreted to require the county to pay for medical treatment as part of its obligation to support county jail inmates. (*Gibson v. County of Sacramento* (1918) 37 Cal.App. 523, 527 [174 P. 935].)

On the face of the statute, a county's responsibility to support persons under Government Code section 29602 arises only if they are "charged with . . . a crime and *committed to the county jail.*" (Italics added). In its usual meaning, "committed" means delivered to the jail and booked or

---

[4] In *Washington Township*, the issue of the county's liability arose in the context of deciding whether the city should pay for the hospital expenses because city police had sent the arrestee to the hospital, or whether the county should pay for the hospital expenses because the arrestee would have been booked into county jail if he had not been injured. (*Washington Township, supra*, 263 Cal.App.2d at pp. 275, 278–280.) The court concluded the county was responsible under the " 'nature of the offense' " test, which places liability on the county if the arrestee was charged with a state or county offense and places liability on the city if the arrestee was charged with a city offense. (*Id.* at pp. 275, 278–280.) After applying the nature of the offense test, the court evaluated the statutory authorization for the county's payment of the hospital bills. (*Id.* at pp. 280–281.) The Attorney General opinion cited in *Washington Township* arose in the same factual context. (42 Ops.Cal.Atty.Gen., *supra*, at pp. 88–91.)

otherwise ordered to reside in the jail by court order. (See Webster's Collegiate Dict. (10th ed. 2002) p. 231 [commit means "to place in a prison or mental institution"].) However, in its 1963 opinion the Attorney General implicitly rejected this ordinary meaning and instead adopted a broad interpretation of the term, concluding that under Government Code section 29602 a county was responsible for an arrestee's medical expenses even though the arrestee had not yet been actually committed to the jail. (42 Ops.Cal.Atty.Gen., *supra*, at p. 91.)[5]

The Attorney General reasoned that because the sheriff had a duty under section 4015 to receive arrested persons taken to the jail, and because a county's duty to support inmates under Government Code section 29602 applied to medical care, the county should be responsible for the arrestee's hospital expenses even though he had not yet been committed to the jail. The Attorney General explained: "[I]n light of the fact that the county jail is the proper place of confinement of a person accused of a felony, the duty of the sheriff to receive prisoners accused of a felony, and the provisions of Government Code section 29602, as construed by the *Gibson* . . . case[], it is concluded that the county is liable for the cost of hospitalization and medical treatment both before and after the prisoner's [booking or] arraignment. [¶] Were it not for the prisoner's physical injuries and need for immediate medical attention, he would have been taken to . . . the county jail . . . . [I]f the prisoner became ill and required hospitalization, the cost of such hospitalization would have been the responsibility of the county. There appears to be no reason for a different rule where the prisoner is in need of medical treatment at the time of his arrest. . . . [T]he fortuitous fact that the prisoner was in need of medical attention at the time of his arrest rather than after his arrival at the county jail . . . should not give rise to a different conclusion." (42 Ops.Cal.Atty.Gen., *supra*, at pp. 90–91.)

Several years later, the court in *Washington Township* evaluated the same issue and adopted the Attorney General's reasoning. The court concluded that Government Code section 29602 provided statutory authorization for imposing liability on the county for arrestees given medical treatment before booking into the county jail. (*Washington Township, supra*, 263 Cal.App.2d at pp. 275, 279–280.) To support this holding, *Washington Township* cited the two provisions in Government Code section 29602 which imposed an obligation on the county (1) to pay for the support of persons "charged with . . . a crime and committed to the county jail," and (2) to pay for "other

---

[5] We note that section 4015 refers to the sheriff's duty to "receive all persons committed to jail by competent authority." When applied in the context of an arresting officer delivering a person to the jail, the section appears to use the term "committed" to mean taken to the jail. Even if commitment is construed in this slightly broader fashion, this does not occur when an arrestee is taken to a hospital rather than the jail.

services in relation to criminal proceedings for which no specific compensation is prescribed by law . . . ." The court determined that both of these provisions could reasonably be construed to apply to the emergency medical expenses of a person who is arrested and taken to the hospital before commitment to the county jail. (*Washington Township, supra*, 263 Cal.App.2d at pp. 280–281.)

The *Washington Township* rule imposing liability on the county for the medical care expenses of precommitment arrestees was apparently adhered to during the ensuing years. In a 1975 Attorney General opinion citing this rule, the Attorney General noted that it was derived from a liberal interpretation of Government Code section 29602 and predicated on a county's duty to receive, support, and maintain arrested persons. (58 Ops.Cal.Atty.Gen., *supra*, at p. 500.)[6]

### *Statutory Provisions After 1992 Amendments*

■ In 1992, the Legislature significantly changed section 4015 by creating an exception to the sheriff's duty to receive an arrestee into jail when the arrestee is in need of immediate medical care. The 1992 amendments added three new subdivisions to section 4015, which (1) provided that the sheriff was not required to receive arrestees into county jail until after the arrestee received the needed medical care, (2) clarified that a city who transported arrestees to a medical facility was not obligated to pay for the medical care expenses of arrestees ultimately booked in county jail, and (3) stated the Legislature's intent that an arrestee's medical care expenses be paid for by the arrestee's private medical insurance or other sources of available coverage. As amended (with the added provisions in italics), section 4015 now states: "(a) The sheriff shall receive all persons committed to jail by competent authority. The board of supervisors shall provide the sheriff with necessary food, clothing, and bedding, for those prisoners, which shall be of a quality and quantity at least equal to the minimum standards and requirements prescribed by the Board of Corrections for the feeding, clothing, and care of prisoners in all county, city and other local jails and detention facilities. Except as provided in Section 4016, the expenses thereof shall be paid out of the county treasury.

"*(b) Nothing in this section shall be construed in a manner that would require the sheriff to receive a person who is in need of immediate medical*

---

[6] In this opinion, the Attorney General concluded that the liberal interpretation of Government Code section 29602 should not be further extended to impose liability in a *prearrest* situation—i.e., where the person was sent to the hospital by the police and arrested *after* receiving medical treatment. (58 Ops.Cal.Atty.Gen., *supra*, at p. 500.)

*care until the person has been transported to a hospital or medical facility so that his or her medical needs can be addressed prior to booking into county jail.*

*"(c) Nothing in this section shall be construed or interpreted in a manner that would impose upon a city or its law enforcement agency any obligation to pay the cost of medical services rendered to any individual in need of immediate medical care who has been arrested by city law enforcement personnel and transported to a hospital or medical facility prior to being delivered to and received at the county jail or other detention facility for booking.*

*"(d) It is the intent of the Legislature in enacting the act adding this subdivision to ensure that the costs associated with providing medical care to an arrested person are borne by the arrested person's private medical insurance or any other source of medical cost coverage for which the arrested person is eligible."* ·

A letter by the Governor published in the Senate Journal described the amendments to section 4015 as follows: " 'This bill would revise several provisions of existing law to provide counties with relief from certain criminal justice state-mandated programs, including a provision *to allow a county sheriff to refuse to accept for booking any person who is need of immediate medical attention.* . . . [¶] . . . [¶] . . . This legislation would . . . clarify that cities shall not be liable for medical costs which accrue as a result of a city peace officer transporting an arrested person to the hospital prior to booking them into the county jail . . . .' " (Historical and Statutory Notes, 51B West's Ann. Pen. Code (2000 ed.) foll. § 4015, p. 599, quoting 4 Sen. J. (1991–1992 Reg. Sess.) p. 8295, italics added.)[7]

In 1992 the Legislature also added a provision to Government Code section 29602 allowing a county to seek reimbursement from a jail inmate's private medical insurance for the county's payment of the inmate's medical expenses. That section (with the added provision in italics) now states: "The expenses necessarily incurred in the support of persons charged with or convicted of a crime and committed to the county jail and the maintenance therein and in other county adult detention facilities of a program of rehabilitative services in the fields of training, employment, recreation, and prerelease activities, and for other services in relation to criminal proceedings for which no specific compensation is prescribed by law are county charges.

---

[7] The Governor's letter actually described two bills that enacted the 1992 amendments to section 4015. The first bill added subdivision (b) and the second bill (enacted after the Governor's letter) added subdivisions (c) and (d). (Historical and Statutory Notes, *supra*, 51B West's Ann. Pen. Code, foll. § 4015, p. 599.)

*However, nothing in this section shall preclude or prohibit the county from receiving reimbursement from a provider of medical insurance coverage for the provision of medical services to a prisoner or detainee received by or held in the county jail or other detention facilities, in those instances where the prisoner or detainee has private medical insurance coverage.*" (Gov. Code, § 29602.)

## Analysis

The County argues that the Legislature's 1992 amendment of section 4015—providing that a sheriff need *not* receive an arrestee in need of immediate medical care—removes the lynchpin of the *Washington Township* rule, thus eliminating its responsibility for the medical care of precommitment arrestees. We agree that the 1992 amendment evinces a legislative intent to eliminate the County's duty to provide for the medical care of precommitment arrestees.

On its face, Government Code section 29602's provision requiring a county to pay for "the support of persons" applies only to persons "*committed* to the county jail." (Italics added.) However, the *Washington Township* court broadly interpreted this Government Code section to impose liability on a county from the point of *arrest*, in effect deeming all arrestees constructively committed to county jail. The rationale for this constructive booking rule arose from the view that if the arrestees had not been ill or injured, they would be in the county jail. (*Washington Township, supra,* 263 Cal.App.2d at pp. 279–280; 42 Ops.Cal.Atty.Gen., *supra,* at pp. 89–91.) At the time *Washington Township* was decided, this conclusion was in harmony with the statute defining a county's obligation to accept arrestees into jail. As noted, section 4015 imposed an absolute duty on the sheriff to receive persons arrested for a state or county offense even if the arrestee was in need of medical attention. Because the sheriff could not delay or refuse to book an ill or injured arrestee, it was consistent with legislative intent for the court to conclude that an ill or injured arrestee who was taken to the hospital instead of county jail should be deemed constructively committed to the jail from the point of arrest.

■ However, when the Legislature added subdivision (b) to section 4015 in 1992, it dispensed with the sheriff's duty to book an arrestee in need of immediate medical care, thereby removing an essential underpinning of *Washington Township*'s constructive booking rule. Even though the arrestee would have been booked into the county jail if not for his or her illness or injury, the Legislature's enactment of a provision allowing delayed booking of an arrestee who needs immediate medical care evinces a clear legislative intent to permit a county to delay accrual of its duty to provide care until the

arrestee receives the needed medical attention and is actually committed to the jail. Given the Legislature's decision to relieve the sheriff of the obligation to accept arrestees in need of immediate medical care, it is inconsistent with current legislative intent to apply the constructive booking concept to these arrestees and, concomitantly, to impose an obligation on a county to pay for their medical care expenses.[8]

This conclusion is also supported by the 1992 addition of subdivision (d) to section 4015, where the Legislature stated that its intent was to ensure that an arrestee's medical costs "are borne by the arrested person's private medical insurance or any other source of medical cost coverage for which the arrested person is eligible." By stating its intent that an arrestee's medical costs be paid by private insurance or other sources of coverage, the Legislature has confirmed that the elimination of a county's duty to receive arrestees in need of immediate medical care abrogates the *Washington Township* rule requiring the county to pay for these expenses. We recognize there may be instances where a precommitment arrestee is not eligible for any source of medical cost coverage. Although the Legislature did not expressly address this situation in the 1992 amendments, its decision to allow the sheriff to delay booking of arrestees until after they have received necessary medical treatment precludes imposing a mandatory obligation on a county to pay for these expenses.[9]

Because arrestees in need of immediate medical care cannot now properly be classified as persons "charged with . . . a crime and committed to the county jail" under a constructive booking theory, the County is no longer responsible for supporting these individuals, including the provision of medical care, under Government Code section 29602. A contrary conclusion cannot be sustained because it would ignore the explicit legislative directive

---

[8] Sharp asserts that *Washington Township*'s constructive booking rule is not premised on the absolute duty to receive arrestees formerly set forth in section 4015, noting that the latter section is not cited in the *Washington Township* opinion. Although *Washington Township* does not explicitly cite section 4015, it expressly refers to the sheriff's duty to receive arrestees, and quotes extensively from the Attorney General's opinion discussing the requirement under section 4015. (*Washington Township, supra,* 263 Cal.App.2d at p. 279; 42 Ops.Cal.Atty.Gen., *supra,* at p. 89; see also 58 Ops.Cal.Atty.Gen., *supra,* at p. 500 [*Washington Township* rule predicated on county's duty to receive, support, and maintain arrested persons].) Moreover, regardless of whether *Washington Township* relied on the sheriff's absolute duty to receive arrestees, the Legislature's elimination of this duty when the arrestee needs medical attention necessarily alters the extent to which a court can, consistent with legislative intent, deem arrestees constructively booked into county jail.

[9] In addition to precluding imposition of liability on a county, subdivision (c) of section 4015 precludes holding a city liable for the medical cost expenses when city personnel transport the arrestee to the hospital. The inclusion of subdivision (c) makes sense in light of the recurring dispute as to which governmental entity should bear financial responsibility when city personnel transport an arrestee to a medical facility before booking into the county jail. (See fn. 4, *ante*; *Washington Township, supra,* 263 Cal.App.2d at pp. 275, 278–280; 42 Ops.Cal.Atty.Gen., *supra,* at pp. 88–91; 41 Ops.Cal.Atty.Gen. 155, 158 (1963).)

that the County may elect to delay booking of arrestees until after they have received needed medical attention.

To support its argument that the County is still responsible for the medical care expenses of precommitment arrestees, Sharp also relies on *Washington Township*'s alternative basis for imposing a financial obligation on a county based on its duty under Government Code section 29602 to pay for " 'services in relation to criminal proceedings.' " (*Washington Township, supra,* 263 Cal.App.2d at p. 281.) We are not persuaded that this alternative basis for county liability survives the 1992 amendments. As stated, the 1992 amendment to section 4015 abrogating a county's duty to receive arrestees in need of immediate medical treatment indicates a clear legislative intent to commence a county's support obligation only upon actual commitment to the jail. This intent is further reflected in the 1992 amendment to Government Code section 29602 which refers to a county's right to seek reimbursement for its medical care expenses for "a prisoner or detainee *received by or held* in the county jail . . . ." (Italics added.) Persons who are received by or held in the jail are persons who are *actually committed* to the jail. The Legislature's use of this language suggests that when it amended the statutes in 1992, it contemplated that county liability would extend only to persons who have been booked into the jail. If the Legislature had intended that a county still be responsible for the medical care of precommitment arrestees, it would have logically used more expansive language in Government Code section 29602 to include a reimbursement right for persons constructively committed under the *Washington Township* rule. The Legislature's reference to a county's reimbursement right as applying to persons actually committed to the jail suggests a correlative intent to limit a county's obligation to this same class of persons.

Finally, Sharp suggests that the 1992 addition of subdivision (b) to section 4015 should not be construed to alter the County's obligation to pay for the medical care expenses of precommitment arrestees because the County continued to pay for their care for more than 10 years after the amendment. The argument is unavailing. Section 4015, subdivision (b) provides that the sheriff is not *required* to book an arrestee in need of immediate medical care. The subdivision does not preclude the sheriff from voluntarily doing so. The fact that after the amendment the County continued to voluntarily book these arrestees "in absentia" and pay for their hospital expenses does not translate into a duty to do so, nor does it alter the plain meaning of section 4015, subdivision (b) dispensing with the duty to book these arrestees until after receipt of the medical care.

In sum, based on the 1992 amendments to section 4015 and Government Code section 29602, the Legislature has expressed its intent to

eliminate a county's liability for a precommitment arrestee's medical care expenses. Given this expression of legislative intent, the constructive booking rule set forth in *Washington Township* is no longer viable. The County is entitled to a summary judgment in its favor.

## DISPOSITION

The judgment in favor of respondents is reversed. The trial court is directed to enter an order granting the County's motion for summary adjudication, and to enter a judgment consistent with this opinion.

Respondents shall pay the County's costs on appeal.

McConnell, P. J., and Huffman, J., concurred.

Respondents' petition for review by the Supreme Court was denied February 20, 2008, S159314.