[No. A122674. First Dist., Div. One. Aug. 24, 2009.]

THE HOSPITAL COMMITTEE FOR THE LIVERMORE-PLEASANTON
AREAS, Plaintiff and Respondent, v.
CITY OF OAKLAND, Defendant and Appellant.

1362

COUNSEL

John A. Russo, City Attorney, Randolph W. Hall, Assistant City Attorney, William E. Simmons, Trial Attorney, and Christopher Kee, Deputy City Attorney, for Defendant and Appellant.

Hoge, Fenton, Jones & Appel, James E. Towery and Alison P. Buchanan for Plaintiff and Respondent.

OPINION

MARCHIANO, P. J.—Defendant City of Oakland appeals from a judgment for plaintiff The Hospital Committee for the Livermore-Pleasanton Areas, doing business as ValleyCare Health System, after plaintiff's motion for summary judgment was granted. The judgment holds the City of Oakland liable for costs of medical care at plaintiff's hospital to an individual who temporarily had been incarcerated in the city jail for violations of probation and parole. We conclude that the County of Alameda, rather than the City of Oakland, was responsible for the medical costs. We therefore reverse the judgment and direct entry of judgment in the City of Oakland's favor.

## I. BACKGROUND

Oakland Police Officer Samuel Francis arrested Kenneth Denham on May 22, 2003, the Thursday before the Memorial Day weekend, for possession of heroin (Health & Saf. Code, § 11350).[1] Denham was on probation and parole. At the time of the arrest, Francis spoke with Denham's California Department of Corrections parole officer, who placed a parole hold on Denham. Denham was transported to and booked into the Oakland City jail. On Friday, May 23, 2003, the Alameda County District Attorney's Office filed a petition to revoke

---

[1] We take judicial notice of the May 2003 calendar. (Evid. Code, § 452, subd. (h) [readily verifiable facts not reasonably subject to dispute].) The Memorial Day holiday was Monday, May 26, 2003.

Denham's probation. The Health and Safety Code section 11350 charge was dropped, and the parole and probation violations became the sole grounds for Denham's incarceration.

While Denham was in the city jail, on Tuesday, May 27, 2003, the court summarily revoked Denham's probation and ordered that he be remanded without bail. Later that same day, Oakland Police Sergeants Christopher Del Rosario and Steve Walker transported Denham to the Alameda County jail at Santa Rita. Intake personnel at the county jail refused to receive Denham, saying that he was too ill. Del Rosario testified in his deposition that he and Walker were "directed or instructed" by county jail personnel to take Denham to plaintiff's hospital, ValleyCare Health System (ValleyCare), "which was across the freeway. We were told that's where they clear their prisoners. We were instructed to take him there, have him cleared and then bring him back."

The officers took Denham to ValleyCare. When it appeared that Denham would need to stay at the hospital, Del Rosario called the city jail commander, Lieutenant Andre Barnes, who instructed Del Rosario to "4011" Denham, "which means to release him on his own recognizance and leave him at the hospital. So we advised Mr. Denham that he was still under arrest, we gave him the 4011 paper and left." The "4011" document, executed by Denham and Del Rosario, and witnessed by Walker, stated: "Under the Provisions of Section 4011, 4011.5, 4011.7 . . . and 4011.9 of the Penal Code, State of California, you have been placed in [the Hospital] for necessary medical Treatment requiring hospitalization. At the conclusion of your Hospital Treatment you will be returned to the Oakland City Jail, pending final adjudication of your present case. . . . [¶] Upon your discharge from the hospital, you must contact Oakland Police Department for transportation . . . ."[2]

Denham remained at the hospital from May 27, 2003, until July 8, 2003, incurring $237,167.88 in medical costs.

Plaintiff sued defendant City of Oakland (the City) under Penal Code sections 4011 and 4011.5, and Alameda County (the County) under Government Code section 29602, and sections 4011 and 4011.5, to recover the cost of Denham's hospitalization. The court granted the County's motion for summary adjudication of the cause of action under Government Code section 29602, sustained the County's demurrer to the cause of action under sections 4011 and 4011.5 without leave to amend, and entered judgment for the County in September 2006. The court overruled the City's demurrer, and

---

[2] Penal Code sections 4011 and 4011.5 are discussed below. Penal Code sections 4011.7 and 4011.9 concern guarding of hospitalized prisoners. Unless otherwise indicated, subsequent statutory references are to the Penal Code.

denied the City's motion for summary judgment. The court granted plaintiff's motion for summary judgment against the City, and entered judgment against the City in June 2008 in the amount of $237,167.88, plus accruing interest at the legal rate.

## II. DISCUSSION

A. *Legal Authority*

The law in this area consists of a handful of statutes, court decisions, and Attorney General opinions. We survey the jurisprudence to understand the present controversy.

(1) *Statutes*

 Sections 4011 and 4011.5 authorize removal of a prisoner from a city or county jail to a hospital for treatment. Section 4011, subdivision (a) provides for removal with a court order, and section 4011.5 for removal without a court order when the prisoner is in need of immediate medical care. Section 4011.5 states that "[t]he provisions of Section 4011 governing the cost of medical and hospital care of prisoners and the liability therefor, shall apply to the cost of, and the liability for, medical or hospital care of prisoners removed from jail pursuant to this section."

Section 4011, subdivision (b) states in relevant part: "The cost of such medical services and such hospital care and treatment shall be charged against the county subject to subdivisions (c) and (d), in the case of a prisoner in or taken from the county jail, or against the city in the case of a prisoner in or taken from the city jail . . . . If the prisoner is in the county jail under contract with a city or under some other arrangement with the city to keep the city prisoner in the county jail, then the city shall be charged, subject to subdivisions (c) and (d), for the prisoner's care and maintenance . . . ." Section 4011, subdivision (d) addresses prisoners who are able to pay for their care. Section 4011, subdivision (c) states in relevant part: "When such prisoner is poor and indigent the cost of such medical services and such hospital care and treatment shall, in the case of persons removed from the city jail be paid out of the general fund of such city, and in the case of persons removed from the county jail to a hospital other than a county hospital, such cost shall be paid out of the general fund of such county or city and county. . . ."[3]

---

[3] The language in the present subdivision (b) was added to section 4011 in 1961 (see 41 Ops.Cal.Atty.Gen. 155, 156–157 (1963)); the language of subdivisions (c) and (d) was added to former section 1607, the forerunner of section 4011, in 1931 (see Stats. 1927, ch. 218, § 1, p. 393; Stats. 1931, ch. 286, § 1, pp. 693–694).

■ Section 4015, subdivision (a) provides that a county sheriff "shall receive all persons committed to jail by competent authority." However, section 4015, subdivision (b) states that "[n]othing in this section shall be construed in a manner that would require the sheriff to receive a person who is in need of immediate medical care until the person has been transported to a hospital or medical facility so that his or her medical needs can be addressed prior to booking into county jail." Similarly, section 4015, subdivision (c) states that "[n]othing in this section shall be construed or interpreted in a manner that would impose upon a city or its law enforcement agency any obligation to pay the cost of medical services rendered to any individual in need of immediate medical care who has been arrested by city law enforcement personnel and transported to a hospital or medical facility prior to being delivered to and received at the county jail or other detention facility for booking."[4]

Government Code section 29602 provides that "[t]he expenses necessarily incurred in the support of persons charged with or convicted of a crime and committed to the county jail . . . and for other services in relation to criminal proceedings for which no specific compensation is prescribed by law are county charges. However, nothing in this section shall preclude or prohibit the county from receiving reimbursement from a provider of medical insurance coverage for the provision of medical services to a prisoner or detainee received by or held in the county jail or other detention facilities, in those instances where the prisoner or detainee has private medical insurance coverage."[5]

### (2) *Opinions*

*County of Sonoma v. Santa Rosa* (1894) 102 Cal. 426 [36 P. 810] (*Sonoma*), held that a county was entitled to reimbursement from a city for the cost of caring for prisoners committed by the city recorder to county jail for violations of city ordinances. The city charter appeared to give the city recorder the option to imprison violators of city ordinances in the county jail (*id.* at p. 427), but the court determined that the recorder was required to commit such persons to the city jail (*id.* at p. 429). The county sheriff was required to " 'receive all persons committed to jail by competent authority' " (*id.* at p. 430, quoting what is now § 4015, subd. (a)), and although the city

---

[4] Subdivisions (b) and (c) were added to section 4015 in 1992, along with subdivision (d), which states that the Legislature's intent was "to ensure that the costs associated with providing medical care to an arrested person are borne by the arrested person's private medical insurance or any other source of medical cost coverage for which the arrested person is eligible." (See *Sharp Healthcare v. County of San Diego* (2007) 156 Cal.App.4th 1301, 1309–1310 [68 Cal.Rptr.3d 152] (*Sharp Healthcare*).)

[5] The last sentence of Government Code section 29602 was added to the statute in 1992. (*Sharp Healthcare, supra,* 156 Cal.App.4th at pp. 1310–1311.)

recorder should have committed violators of city ordinances to city jail, the recorder was a "competent authority" with jurisdiction to try and punish such persons (102 Cal. at p. 431). By maintaining such persons in the county jail, the county had "borne an expense which, under the law, should have been borne by the city" (*ibid.*), because the city was responsible for the cost of enforcing city ordinances (*id.* at p. 429). "[T]he expense of enforcing its ordinances being imposed upon the city by law, a promise to pay therefor [county maintenance of city ordinance violators] is implied." (*Id.* at p. 431.) "A commitment by the judicial officer of the city . . . , though erroneous, [had] at least the force of a request" that the prisoners be received by the county. (*Ibid.*)

*Gibson v. County of Sacramento* (1918) 37 Cal.App. 523, 526, 527 [174 P. 935], construed the provision for county support of "persons charged with or convicted of [a] crime and committed therefor to the county jail," presently appearing in Government Code section 29602, to impose a duty on "the state or the county, its agent," to pay for "such necessary medical treatment as may be required."

*City of Pasadena v. County of L. A.* (1953) 118 Cal.App.2d 497, 501 [258 P.2d 28] (*Pasadena*), held that a city was not entitled to reimbursement from a county for the cost of caring for persons arrested by city police on felony charges. The city's practice with respect to such persons was to detain them in the city jail pending arraignment, rather than transferring them to the custody of the sheriff at a nearby sheriff's substation. (*Id.* at pp. 498–499.) The court observed: "The county jail is the proper place of confinement of a person accused of a felony pending the examination of the charge, and pending and until the completion of a trial of the charge. [Citation.] The statutes contemplate that persons arrested and detained for violation of state law shall be confined in the county jail and that their care and maintenance shall be provided by the county. [Citation.]" (*Id.* at p. 499.) However, "[t]here was no statute imposing [the city's] expense on the county" (*ibid.*), and as a "general rule . . . a public corporation is liable for prison expenses when, and only when, such liability is imposed by statute . . ." (*id.* at p. 500). Since there was no express contract between the city and county covering maintenance of the prisoners, the city could not recover, unless, as in *Sonoma, supra,* 102 Cal. 426, there was an implied contract for reimbursement. The *Pasadena* court found no such implied contract when the city voluntarily cared for the prisoners.

The *Sonoma, supra,* 102 Cal. 426 and *Pasadena, supra,* 118 Cal.App.2d 497 decisions were cited in 41 Ops.Cal.Atty.Gen., *supra,* at page 155, which addressed the question: "Where the city police have arrested an individual for disorderly conduct and, prior to the prisoner's being booked and arraigned for

a violation of Penal Code section 647(f), he becomes ill and is hospitalized in the county hospital, is the city required to reimburse the county for the cost of the hospitalization?" (41 Ops.Cal.Atty.Gen., *supra*, at pp. 155–156.) The opinion concluded that, in the absence of a contract to the contrary, the city would not be required to reimburse the county in that situation.

*Sonoma, supra*, 102 Cal. 426 was cited among other authorities for a rule that, "as between a city and a county, the liability for maintenance costs or medical treatment and hospitalization costs of prisoners in the county jail is dependent upon the nature of the offense for which the prisoner is held. The place of detention is not determinative." (41 Ops.Cal.Atty.Gen., *supra*, at p. 157; see 22 Ops.Cal.Atty.Gen. 209, 210 (1953) [city responsible for costs of maintaining prisoners committed to county jail for violation of city ordinances]; 15 Ops.Cal.Atty.Gen. 173, 174 (1950) [city responsible for prisoner held in county jail awaiting appearance before magistrate on charge of violating city ordinance]; 7 Ops.Cal.Atty.Gen. 321, 322 (1946) [city responsible for cost of hospitalization of prisoner committed to county jail for violation of city ordinance; county liable for that expense if prisoner is committed to county jail for violation of state law]; Gov. Code, § 36903 ["Imprisonment for violation of an ordinance shall be in the city jail, unless by ordinance the legislative body prescribes imprisonment in the county jail. If city prisoners are imprisoned in the county jail the expense is a charge against the city."].)

The Attorney General found no opinion that had dealt with hospitalization of a prisoner being detained in city jail for a violation of state law, but "submitted that the so-called 'nature of the offense test' would be equally applicable in that situation." (41 Ops.Cal.Atty.Gen., *supra*, at p. 157.) "Penal Code section 4011 (d) [now § 4011, subd. (c)], which prior to 1961 was the basic statutory provision pertaining to the liability of a city or a county for the costs of hospitalization and medical treatment of prisoners, provides in effect that the determination of this liability depends upon whether the prisoner in need of medical care has been 'removed from' the city jail or the county jail. . . . [N]otwithstanding this language, the liability for medical costs attributable to prisoners removed from the county jail is dependent upon the nature of the offense which is the basis of the prisoner's detention. This test should also be used to determine liability for medical and hospital expenses for prisoners taken from the city jail. The statutory test is the same for both situations and the test used in one situation should be used in the second. In this regard, it is our understanding that, at least prior to the 1961 amendment to Penal Code section 4011 [adding what is now § 4011, subd. (b)], the so-called 'nature of the offense test' had been applied throughout the state to determine the liability for medical costs for prisoners taken from a city jail." (41 Ops.Cal.Atty.Gen., *supra*, at p. 157.) The 1961

legislation did not purport to change the statutory nature of the offense test that "had been in existence for many years." (*Id.* at p. 158.)

"Thus," the Attorney General concluded, "where the city police arrest an individual for a violation of a state law and, because of the time of the arrest or the distance to the sheriff's office or county jail detain the prisoner for a short time, it would not be unreasonable to conclude that the hospitalization costs for prisoners who become ill during the interim period should be a county charge. Cf. [*Pasadena, supra*, 118 Cal.App.2d 497], which concludes that a city cannot recover expenses attributable to the maintenance of prisoners held for violation of state law where the city police could have taken the prisoners to the sheriff's office prior to their arraignment, but failed to do so." (41 Ops.Cal.Atty.Gen., *supra*, at p. 158, italics omitted.)

The Attorney General observed that the nature of the offense test served to apportion responsibility between cities and counties in situations where their liability was otherwise unclear. The ambiguous scenarios included one where "the prisoner becomes ill while being detained overnight in the city jail because the sheriff was not equipped to take custody during the evening hours or because the sheriff's office was a considerable distance from the place of arrest and the city police did not have the personnel necessary for an immediate transfer of the prisoner to the sheriff's custody. Similarly, would the county or city be liable if the prisoner became ill while being transported to the sheriff's office or, while he was in the sheriff's office, but prior to the actual transfer of custody?" (41 Ops.Cal.Atty.Gen., *supra*, at pp. 158–159.)

In 42 Ops.Cal.Atty.Gen. 87 (1963), the Attorney General considered an inquiry involving a city police officer who arrested an individual for murder, determined that the individual needed immediate medical care, and took the individual to the nearest hospital, which was owned and operated by a local hospital district. The facts were the same as those in 41 Ops.Cal.Atty.Gen., *supra*, at page 155, except that in this instance the prisoner was in need of immediate medical care upon being arrested, and was taken to a district, rather than county, hospital. (42 Ops.Cal.Atty.Gen., *supra*, at p. 90.) Those distinctions did not dictate a different result; as in the prior case, the county was liable in the absence of a contract that provided otherwise. (*Id.* at pp. 88, 90.)

The Attorney General wrote: "Were it not for the prisoner's physical injuries and need for immediate medical attention, he would have been taken to either the county jail or the city's holding facilities pending his transportation to the county jail. In either case, in the absence of a contract providing otherwise, if the prisoner became ill and required hospitalization, the cost of such hospitalization would have been the responsibility of the county. There

appears to be no reason for a different rule where the prisoner is in need of medical treatment at the time of his arrest. The so-called 'nature of the offense' test has traditionally been the basis for determining liability for the cost of medical treatment and hospitalization. Accordingly, the fortuitous fact that the prisoner was in need of medical treatment at the time of his arrest rather than after his arrival at the county jail or city holding facilities should not give rise to a different conclusion." (42 Ops.Cal.Atty.Gen., *supra*, at p. 91.) The statutory ground for liability was Government Code section 29602, which made the county responsible for the " 'expenses necessarily incurred in the support of persons charged with or convicted of crime and committed to the county jail . . . .' " (42 Ops.Cal.Atty.Gen., *supra*, at p. 90.)

In *Washington Township Hosp. Dist. v. County of Alameda* (1968) 263 Cal.App.2d 272 [69 Cal.Rptr. 442] (*Washington Township*), the court was presented with the situation addressed in 42 Ops.Cal.Atty.Gen., *supra*, at page 87. A city police officer arrested a man at the scene of a homicide, determined that he needed immediate medical attention, and took him to the nearest hospital. The man was arraigned two days later and subsequently transferred out of the hospital. The hospital sued the city and the county for the costs of the treatment it provided; the county conceded that it was responsible for expenses incurred after the arraignment, but disputed its liability for the prearraignment expenses. The trial court found that the city was responsible under section 4011 for the prearraignment costs. On appeal, the court disagreed and held that the county was liable under Government Code section 29602 for all of the expenses.

In reaching this conclusion, the court was guided by 42 Ops.Cal.Atty.Gen., *supra*, at page 87, and 41 Ops.Cal.Atty.Gen., *supra*, at page 155, and the "nature of the offense" rule they discussed. (*Washington Township, supra*, 263 Cal.App.2d at pp. 278–280.) The court wrote: "The Attorney General's contemporaneous interpretation of statutory provisions is not of controlling significance but such practical interpretation, extending over a substantial period of time, is entitled to great weight. [Citation.] The Attorney General's construction of section 29602 of the Government Code would obviously best effectuate the established rule imposing upon the county, rather than the city, liability for the care and maintenance of 'county prisoners' who, even though arrested by city police officers, are charged with and ultimately arraigned for a violation of state statute or county ordinance. . . ." (*Id.* at p. 280.)

The court deemed it reasonable and "consonant with the legislative intent" to interpret Government Code section 29602's provision for county "support of persons charged with . . . a crime and committed to the county jail" to include persons who are arrested, if they are "ultimately arraigned . . . for a violation of a state law." (*Washington Township, supra*, 263 Cal.App.2d at

pp. 280–281.) The court further held that emergency medical treatment of persons arrested and ultimately arraigned for state law violations was chargeable to the county under the statute as " 'services in relation to criminal proceedings for which no specific compensation is prescribed by law.' " (*Id.* at p. 281.)

The Attorney General subsequently opined that the reasoning of *Washington Township, supra,* 263 Cal.App.2d 272, 42 Ops.Cal.Atty.Gen., *supra,* at page 87, and 41 Ops.Cal.Atty.Gen., *supra,* at page 155, could not be extended to hold a county liable under Government Code section 29602 for the cost of medical care given to suspects who received hospital treatment at the request of city police, but were not arrested until they were released from the hospital. (58 Ops.Cal.Atty.Gen. 496, 497 (1975).) The prior opinions had presupposed that the individual was in legal custody (*id.* at p. 499), and an arrest was "the outer limits of the term 'charged,' which itself is the outer limit for invoking [Government Code] section 29602" (*id.* at p. 500).

74 Ops.Cal.Atty.Gen. 21 (1991), the last in the series of Attorney General opinions, concluded that a county jail was required to receive from a city police officer an arrested person who was injured and in need of medical attention, whether or not the person consented to be treated. The opinion cited, among other things, the section 4015 directive that a sheriff receive persons committed to jail by competent authority (74 Ops.Cal.Atty.Gen., *supra,* at p. 22); the general rule that "the county will be liable for the costs of county prisoners, and the city will be liable for the costs of city prisoners" (*ibid.*); and public entity liability under Government Code section 845.6 for failure to summon immediate medical care required by prisoners, as opposed to " 'persons who are simply under arrest and therefore are not prisoners' " (74 Ops.Cal.Atty.Gen., *supra,* at p. 23). The next year, the Legislature added subdivision (b) to section 4015 (fn. 4, *ante*), which provides that a sheriff is not required to receive a person requiring immediate medical care until the person is treated at a medical facility prior to booking into the county jail.

Section 4015, subdivision (b) led the court in *Sharp Healthcare, supra,* 156 Cal.App.4th at pages 1304–1305, 1311–1314, to conclude that the holding in *Washington Township, supra,* 263 Cal.App.2d 272 was no longer viable. *Sharp Healthcare* held that counties were not liable for the cost of medical treatment provided by hospitals to "precommitment arrestees," i.e., persons who had not been committed to the county jail through physical booking or arraignment at the hospital (*Sharp Healthcare, supra,* at p. 1304, fn. 2). The court wrote: "On the face of the statute, a county's responsibility to support persons under Government Code section 29602 arises only if they are 'charged with . . . a crime and *committed to the county jail.*' (Italics added.) In its usual meaning, 'committed' means delivered to the jail and booked or

otherwise ordered to reside in the jail by court order." (*Sharp Healthcare, supra,* 156 Cal.App.4th at pp. 1307–1308.) "However, the *Washington Township* court broadly interpreted this Government Code section to impose liability on a county from the point of *arrest,* in effect deeming all arrestees constructively committed to county jail. . . . At the time *Washington Township* was decided . . . the sheriff could not delay or refuse to book an ill or injured arrestee . . . . [¶] . . . [W]hen the Legislature added subdivision (b) to section 4015 in 1992, it dispensed with the sheriff's duty to book an arrestee in need of immediate medical care, thereby removing an essential underpinning of *Washington Township*'s constructive booking rule. Even though the arrestee would have been booked into the county jail if not for his or her illness or injury, the Legislature's enactment of a provision allowing delayed booking of an arrestee who needs immediate medical care evinces a clear legislative intent to permit a county to delay accrual of its duty to provide care until the arrestee receives the needed medical attention and is actually committed to the jail." (*Sharp Healthcare, supra,* at pp. 1311–1312, original italics.)

*Sharp Healthcare* found further evidence of this legislative intent in the 1992 revision of Government Code section 29602, and the addition that year of subdivision (d) to section 4015. The Government Code section 29602 amendment referred to reimbursement of medical expenses the county incurred for prisoners "received by or held in" county jail, which contemplated county liability only for "persons who have been booked into the jail," and not for "persons constructively committed under the *Washington Township* rule." (*Sharp Healthcare, supra,* 156 Cal.App.4th at p. 1313.) Section 4015, subdivision (d)'s expressed intent that an arrested person's medical costs be paid by private insurance or other available sources of coverage further confirmed that counties were not liable for those costs. (*Sharp Healthcare, supra,* at p. 1312.) This clear legislative intent also abrogated the alternative holding in *Washington Township, supra,* 263 Cal.App.2d 272 that medical care of arrested persons was a " ' "service[] in relation to criminal proceedings" ' " for which the county was liable under Government Code section 29602. (*Sharp Healthcare, supra,* at p. 1313.)

## B. *Trial Court Rulings*

The court applied the language of section 4011 in ruling against the City below. Because inmate Denham was transported from the city jail to the hospital, the City was responsible under the terms of this statute for the cost of his hospitalization. (§ 4011, subd. (b) [cost of hospital care is charged against the city when prisoner is "taken from the city jail"]; § 4011, subd. (c) [cost is paid out of city general fund when prisoner is "removed from the city jail"].) No statute relieved the City from the liability imposed by section 4011, subdivisions (b) and (c). Section 4015, subdivision (c), which provides that a

city is not obligated to pay for the cost of treatment when an individual is arrested and taken to a hospital before "being delivered to and received at the county jail or other detention facility for booking," did not assist the City because Denham had been booked into a detention facility, namely the city jail. While section 4011, subdivision (b) states that a city is responsible for the care of a "city prisoner" who by contract or other arrangement is being held in county jail, "the statute makes no such provision for the converse situation, as here."

The court acknowledged that "Denham was held in the City jail based upon directions from the California Department of Corrections and the Alameda County District Attorney's Office," but found "[t]he fact that the prisoner was being held by the City at the request of the County [was] of no moment." The court found the City's argument that Denham had been constructively committed to the county jail untenable under *Sharp Healthcare.* The decision in *Sharp Healthcare, supra,* 156 Cal.App.4th 1301 "offer[ed] no basis to read into Penal Code §§ 4011 or 4015 a requirement that the County and not the City [was] responsible in these particular circumstances." The decision in *Washington Township, supra,* 263 Cal.App.2d 272 and the "nature of the offense" rule employed in that case also failed to exonerate the City. *Washington Township* applied Government Code section 29602, but Penal Code section 4011, the more specific statute, was controlling. "Despite dicta in the *Washington Township* case to the contrary, [section 4011 was] not consistent with the 'nature of the offense' rule." Thus, *Washington Township* was not "binding or persuasive."

The County's demurrer to the cause of action under sections 4011 and 4011.5 was sustained without leave to amend because plaintiff could not allege that Denham was a prisoner in the county jail before his hospitalization. Section 4015, subdivision (c) did not "create an exception to the plain language of §§ 4011 and 4011.5," because that subdivision applied only when an arrested person was taken to a hospital before being received at a detention facility. The County's motion for summary adjudication of the cause of action under Government Code section 29602 was granted because "Denham was never 'committed to the county jail' or arraigned prior to his admission to ValleyCare Medical Center, and he was not charged with a crime during the time he received treatment." "The fact that [Denham] was on parole at the time of his arrest [did] not transform his arrest into an actual commitment to county jail." The County was not responsible under *Washington Township, supra,* 263 Cal.App.2d 272 for the cost of Denham's hospitalization because he was not arraigned, and because the subsequent enactment of section 4015, subdivision (b) relieved the County from liability.

## C. *Our Analysis*

■ In allocating the liability of cities and counties for the cost of hospital care of persons in custody, the statutes and opinions have distinguished between prisoners and those who have merely been arrested. Section 4015, subdivisions (b) and (c) provide, and the decision in *Sharp Healthcare, supra,* 156 Cal.App.4th 1301 confirms, that neither the city nor the county is liable when an arrested person is brought to the hospital before being imprisoned. On the other hand, section 4011, subdivisions (b) and (c) impose liability on the city or county where a prisoner is removed to the hospital from a city or county jail. The language of section 4015, subdivisions (b) and (c) suggests that an arrested person becomes a prisoner for purposes of hospital cost liability when he or she is "received" at a detention facility for "booking,"[6] but no difficult line drawing between a prisoner and an arrestee is required in this case. Denham had been booked into the city jail and held there for several days before he was taken to the hospital, and was a "prisoner" within the meaning of section 4011, subdivisions (b) and (c). Thus, there is no question that either the City or the County is responsible under those subdivisions for the cost of his hospitalization; the only issue is: which entity?

Plaintiff argues, and the trial court concluded, that section 4011, subdivisions (b) and (c) must be applied literally to make the city liable when the prisoner is "taken" or "removed" to the hospital from the city jail, and the county liable when the prisoner is taken or removed to the hospital from the county jail. In our view, however, those statutes do not invariably allocate responsibility between cities and counties based on the happenstance of a prisoner's place of confinement, and a closer examination of the statutes is required.

Well before the enactment of what is now section 4011, subdivision (c) in 1931 (fn. 3, *ante*), the Legislature had provided that certain cities were liable for the expense of imprisonment of city ordinance violators who were incarcerated in county jail (Stats. 1883, ch. 6, § 769, p. 256; Stats. 1883, ch. 7, § 867, p. 272), and our Supreme Court had rendered its decision in *Sonoma, supra,* 102 Cal. 426 to the same effect. Under Government Code section 36903, enacted in 1949 (Stats. 1949, ch. 79, § 1, pp. 100, 151), cities are responsible for the expense of maintaining "city prisoners," i.e., those "[i]mprison[ed] for violation of an ordinance," who are confined in county

---

[6] This would be essentially the same test as the one used to determine when a person becomes a "prisoner" for purposes of governmental immunities. (Gov. Code, § 844 ["a lawfully arrested person who is brought into a law enforcement facility for the purpose of being booked . . . becomes a prisoner, as a matter of law, upon his or her initial entry into a prison, jail, or penal or correctional facility, pursuant to penal processes"].)

jail. When section 4011, subdivision (b) was enacted in 1961 (fn. 3, *ante*), the provision ostensibly making the county liable for the hospital care of prisoners taken from county jail was qualified by one stating that cities are liable for the hospital care of "city prisoner[s]" who are "in the county jail under contract . . . or under some other arrangement with the city." Thus, it has never been possible to read the "taken" or "removed" from jail language in section 4011 for a rule that apportioned responsibility in every instance according to where the prisoner was confined.

41 Ops.Cal.Atty.Gen., *supra*, at page 158, the only authority that has directly addressed the situation we face here—hospitalization of a prisoner detained for a short time in city jail for violation of state law—persuasively concluded that the expense should be a county charge. This conclusion followed from application of the "nature of the offense" test, which, according to the opinion, had long been used to apportion liability for medical costs incurred by prisoners taken from city jails, notwithstanding the statutory language on which plaintiff relies. (*Id.* at pp. 157–158.) Under the nature of the offense rule, which we believe applies here, the County, not the City, is responsible under section 4011 for the costs at issue because Denham was hospitalized while incarcerated for violations of probation and parole under state law.[7]

We agree with the Attorney General opinion that the addition of what is now subdivision (b) to section 4011 did not evince an intent to depart from the well-established "nature of the offense" rule. (41 Ops.Cal.Atty.Gen., *supra*, at pp. 157–159.) To the contrary, the new language introduced the term "city prisoner" into the statute, which, in accordance with the nature of the offense test, could only refer to prisoners who were being held on city offenses. (See Gov. Code, § 36903.) The recognition of a class of "city prisoners" implied the existence of another class of prisoners who were *not* "city prisoners," namely "county prisoners" who were being held on state offenses. (See 74 Ops.Cal.Atty.Gen., *supra*, at p. 22 [county is generally liable for costs of "county prisoners"].) While the trial court was of the view that the Legislature's failure to expressly make counties liable for county prisoners in city jails indicated that no such liability was intended, we think it is more likely that the omission simply stemmed from the fact that the issue of such liability rarely arises. (See 41 Ops.Cal.Atty.Gen., *supra*, at pp. 156–157 [citing various opinions that had dealt with liability for city prisoners in county jails, and noting the dearth of authority on the converse situation].)

---

[7] The nature of the offense rule is evidently used in a majority of jurisdictions to determine whether cities or counties are liable for prisoner care, rather than a " 'custody and control rule, which places responsibility for the care of a prisoner upon the entity that exerts actual physical dominion and control over the prisoner.' " (*Mohave County v. City of Kingman* (1989) 160 Ariz. 502, 505–506 & fn. 2 [774 P.2d 806, 809–810 & fn. 2] [collecting cases].)

Plaintiff contends that, even if Denham could be characterized as a "county prisoner," "no authority" supports use of the nature of the offense test when such a prisoner is being held in city jail. However, the discussion in 41 Ops.Cal.Atty.Gen., *supra*, at pages 157–158, is directly on point and can be given "great weight" (*Washington Township, supra,* 263 Cal.App.2d at p. 280). Plaintiff suggests that the Attorney General opinion can be disregarded because references to the nature of the offense rule in *Washington Township* were dicta, and *Washington Township*'s holding, as explained in *Sharp Healthcare, supra,* 156 Cal.App.4th 1301, did not survive enactment of section 4015, subdivisions (b) and (c). The argument that *Washington Township*'s use of the nature of the offense rule was mere dictum is premised on the erroneous assertion that the case "did not involve . . . section[] 4011." Section 4011 was in fact central to *Washington Township* because the court was called upon to review, and reverse, a judgment that held a city liable under that statute. (*Washington Township, supra,* 263 Cal.App.2d at pp. 275, 281.) The Attorney General opinion stands on its own merit in any event, and is not called into question by the decision in *Sharp Healthcare. Sharp Healthcare* had no occasion to employ the nature of the offense test because the test apportions liability "as between a city and a county" (41 Ops.Cal.Atty.Gen., *supra,* at p. 157), and neither the city nor the county was liable under the circumstances in that case.

■ Our conclusion that the nature of the offense rule, rather than a place of confinement or "custody and control" rule (fn. 7, *ante*), determines whether a city or county is liable under section 4011 is supported by "the settled principle that when uncertainty arises as to the meaning of a statute, courts must consider the consequences that will flow from a particular interpretation. It must be presumed that the Legislature intended reasonable and practical results consistent with its express purpose, not absurd or adverse consequences. If statutory language is susceptible of two constructions, one that would render it reasonable, fair, and harmonious with its manifest purpose, and another that would be productive of absurd consequences, a court will adopt the former. [Citation.]" (*In re Bittaker* (1997) 55 Cal.App.4th 1004, 1009 [64 Cal.Rptr.2d 679].) As the City points out, plaintiff's literal reading of the statute would make the City liable when a prisoner brought to court from county jail falls ill and requires hospitalization while temporarily detained in a city jail pending the hearing, a result the Legislature clearly could not have intended. Although a court in that scenario would likely hold that the county was responsible for the hospital costs because the prisoner had been committed to county jail under Government Code section 29602, plaintiff's construction of section 4011 would create a needless conflict between the statutes.

We note also that this case is analogous to *Sonoma, supra,* 102 Cal. 426 and distinguishable from *Pasadena, supra,* 118 Cal.App.2d 497. The City

maintained custody of Denham pursuant to the parole hold placed on him by his state parole officer, the petition of the County district attorney to revoke his probation, and the order of a county judge revoking his probation and remanding him without bail. These directives, like the city recorder commitments of city prisoners to county jail in *Sonoma*, had "at least the force of a request" (*Sonoma, supra*, at p. 431) to hold Denham as a prisoner, and equally supported a finding of an implied promise on the part of the County to pay for the cost of his maintenance. Directives on the part of the state and the County to keep Denham in custody distinguish the situation here from that in *Pasadena* where no county official made any order or request that the prisoners be confined by the city, and the city was held to have voluntarily maintained them. This is not to say that a city could keep county prisoners in city jail indefinitely without incurring liability for the cost of their care, but a city can hold county prisoners for "a short time" after their arrests (41 Ops.Cal.Atty.Gen., *supra*, at p. 158), such as the two-business-day period here, without being deemed to have volunteered to care for them.

We further conclude that the County is liable for the hospital costs under Government Code section 29602, as well as section 4011. *Sharp Healthcare, supra*, 156 Cal.App.4th at page 1304, footnote 2, noted that a prisoner can be committed to county jail within the meaning of Government Code section 29602 through arraignment on a state law offense. In this case, Denham would have been arraigned on the Health and Safety Code violation for which he was arrested, before being taken to the county jail, but for the County district attorney's decision to proceed against him on a violation of his probation, rather than on the new offense. (See § 825, subd. (a)(1) [deadline for arraignment].) The summary probation revocation and no bail remand order was the functional equivalent of a commitment to county jail via arraignment (see *Sharp Healthcare, supra*, 156 Cal.App.4th 1301, 1307–1308 ["committed" includes being ordered by the court to reside in jail]), and should be treated no differently for purposes of the County's liability under Government Code section 29602.

Plaintiff argues that the City became responsible for the cost of Denham's hospitalization by virtue of the "4011" document it gave him stating that he would be returned to city jail upon his discharge from the hospital. However, the City's agreement with Denham did not address whether the City or the County would be responsible for the cost of his care. A contract answering that question would have been between the City and the County. Contracts between cities and counties, when they exist, are ultimately controlling in this area. (See 41 Ops.Cal.Atty.Gen., *supra*, at p. 156 [county liable in absence of contract providing otherwise]; 42 Ops.Cal.Atty.Gen., *supra*, at p. 88 [same].) We would have expected the County and the City to have submitted a memorandum of understanding covering prisoners in 2003 such as Denham, but if one existed, it is not in the record.

In summary, the County was liable under section 4011 and Government Code section 29602 for the costs of Denham's medical care at the hospital.[8]

### III. DISPOSITION

The judgment is reversed, with directions to enter judgment for the City.

Margulies, J., and Graham, J.,[*] concurred.

---

[8] In view of our conclusion that the City is not liable, we need not determine whether there are triable issues as to the amount of damages.

[*]Retired judge of the Marin Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.